**STATE of Utah, Plaintiff and Appellant,**

**v.**

**Jose Francisco ARROYO, Defendant and Respondent.**

**No. 880062–CA.**

Court of Appeals of Utah.

Feb. 15, 1989.

---

## 154

David L. Wilkinson and Sondra L. Sjogren, Salt Lake City, for plaintiff and appellant.

Walter F. Bugden, Jr., Salt Lake City, for defendant and respondent.

Before DAVIDSON, BILLINGS, and GARFF, JJ.

## OPINION

BILLINGS, Judge:

The State of Utah filed an interlocutory appeal challenging the district court's suppression of cocaine seized after a Utah Highway trooper stopped Jose Francisco Arroyo ("Arroyo") for an alleged traffic violation. The trial court found the stop of Arroyo's vehicle was a pretext stop which violated Arroyo's fourth amendment rights. We reverse.

## FACTS

At approximately 4:00 p.m. on September 15, 1987, Utah Highway Patrol Trooper Paul Mangelson ("Trooper Mangelson") was driving home after completing his shift an hour earlier. Trooper Mangelson was driving southbound on I-15 near Nephi, Utah, when he observed a northbound truck-camper following the car in front of it too closely. Trooper Mangelson made a U-turn through the median and caught up with Arroyo's truck.

Trooper Mangelson observed that the truck was following the vehicle in front of him at a distance of three to eight car lengths at a speed of approximately fifty miles per hour. Trooper Mangelson pulled alongside the truck in order to observe its occupants and estimate the truck's speed. Trooper Mangelson noted that Arroyo and his passenger were Hispanic, and he stopped the truck.

Arroyo, the driver, was cited for "following too closely" and for driving on an expired driver's license. Trooper Mangelson then asked Arroyo if he could search his truck, and Arroyo agreed.

The search revealed approximately one kilogram of cocaine inside the passenger door panel. Trooper Mangelson then arrested Arroyo for possession of a controlled substance with intent to distribute in violation of Utah Code Ann. § 58–37–8(1)(a)(i) (1986), a second degree felony.

Arroyo moved to suppress the cocaine claiming Trooper Mangelson's traffic stop was a pretext to search his truck for evidence of a more serious crime. The trial court found no traffic violation had occurred and ruled that Trooper Mangelson's stop of Arroyo's truck was a pretext to investigate a vehicle he found suspicious because of out-of-state license plates and Hispanic occupants. The trial court found Arroyo consented to the subsequent search of his truck, but nevertheless, granted the motion to suppress. The State appeals.

■ The issues on appeal are (1) whether the trial court erred in ruling that Trooper Mangelson's stop of Arroyo for "following too closely" was a pretext stop, and (2) whether Arroyo's subsequent consent to the search of his truck purged the taint of the otherwise unconstitutional stop.[1]

The trial court's factual evaluation underlying its decision to grant or deny a motion to suppress will not be disturbed unless it is clearly erroneous, since the trial judge is in the best position to assess the witnesses' credibility. *State v. Sierra,* 754 P.2d 972, 974 (Utah Ct.App.1988). However, in reviewing the trial court's legal conclusions based upon those findings, we afford no deference and apply a correction

---

1. Our analysis is confined to the protections granted under the Fourth Amendment to the United States Constitution rather than article I, section 14 of the Utah Constitution. Arroyo attempts to raise the state constitutional issue as has been encouraged by our Supreme Court. *See, e.g.,* 1) *State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988); 2) *State v. Earl,* 716 P.2d 803, 806 (Utah 1986). However, a three line conclu-

sory statement as to the greater scope of state constitutional protections is an insuffient briefing for us to embark on a state constitutional analysis and we, therefore, refuse to do so. When analyzing state constitutional issues, our Supreme Court has cited with approval the approach taken in *State v. Jewett,* 146 Vt. 221, 500 A.2d 233 (1985).

of error standard. *Oates v. Chavez,* 749 P.2d 658, 659 (Utah 1988).

## PRETEXT STOP

 We first consider whether Trooper Mangelson's stop of Arroyo's truck was incident to a lawful stop for a traffic violation or was a constitutionally defective "pretext" stop. A police officer may stop a vehicle for a traffic violation committed in the officer's presence. Nevertheless, a police officer may not "use a misdemeanor arrest as a pretext to search for evidence of a more serious crime." *Sierra,* 754 P.2d at 977. Courts must look to the totality of the circumstances to determine whether a stop for a traffic violation and subsequent arrest is a pretext. This involves "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Id.* The actual state of mind of the officer at the time of the challenged action is irrelevant. *Id.* (quoting *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985)). Thus, in this appeal, the question is whether a reasonable officer, in view of the totality of the circumstances of this case, would have stopped Arroyo for "following too closely." The proper focus is not on whether Trooper Mangelson could have validly made the stop. *Sierra,* 754 P.2d at 978.

Trooper Mangelson observed Arroyo following the vehicle in front of him at a distance of between three and eight car lengths at a speed of approximately fifty miles per hour. It is noteworthy that Trooper Mangelson had completed his shift an hour earlier, and was driving home in the opposite direction from Arroyo when he observed the alleged traffic violation, one for which very few citations are issued.[2] Trooper Mangelson did not stop Arroyo until he had pulled alongside the truck, and observed that the occupants were Hispanic, having already noted that Arroyo was driving a truck with out-of-state license plates.

We agree with the trial judge that the stop was an unconstitutional pretext to search for drugs. We are persuaded that a reasonable officer would not have stopped Arroyo and cited him for "following too closely" except for some unarticulated suspicion of more serious criminal activity.

## CONSENT

Our inquiry does not end with the determination that Trooper Mangelson's stop of Arroyo was unconstitutional. We must next consider whether Arroyo's subsequent consent to the search of his truck purged the taint of the illegal stop thereby making admissible the cocaine seized. The appropriate inquiry is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Sierra,* 754 P.2d at 980 (quoting *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963)).

 "The United States Supreme Court has rejected a 'but for' exclusionary rule for evidence seized as a result of prior illegality." *Id.* (citations omitted). Thus, even though this evidence would not have been discovered "but for" the prior illegal stop, the evidence is not per se inadmissible. *Id.* Moreover, a search conducted pursuant to *voluntary* consent purges the taint from the prior illegality. *Sierra,* 754 P.2d at 980 (citing *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–418, 9 L.Ed.2d 441 (1963)). *Accord United States v. Carson,* 793 F.2d 1141, 1148–49 (10th Cir.1986), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986); *State v. Aquilar,* 758 P.2d 457, 459 (Utah Ct.App.1988). To determine whether consent is voluntary, we look to the totality of the circumstances to see if the consent was in fact voluntarily given and not the result of " 'duress or coercion, express or implied.' " *Sierra,* 754 P.2d at 980 (quoting *Schneckloth v. Bustamonte,* 412 U.S.

---

**2.** Trooper Mangelson testified that he had issued only three or four citations for "following too closely" in 1987.

218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973)). The State bears the burden of proving that consent was voluntarily given. *Sierra,* 754 P.2d at 981.

In this regard, we note Arroyo did not contest the State's argument at the suppression hearing that he voluntarily consented to the search of his truck. Arroyo, through his counsel stipulated that he consented to the search. Arroyo's counsel objected when the State attempted to offer evidence to establish Arroyo's consent was voluntary, claiming it was not relevant as the only issue was whether the original stop was a pretext. As a result, the trial court limited testimony concerning the circumstances surrounding Arroyo's consent. The trial judge specifically found that Arroyo consented to the search of his truck, and there is nothing in the record to contradict this finding.

For the first time on appeal, counsel now argues that Arroyo's consent was not voluntary as there was no "break in the causal connection between the illegality and the evidence thereby obtained." *United States v. Recalde,* 761 F.2d 1448, 1458 (10th Cir.1985). However, this argument should have been made below. A defendant cannot mislead the State and the court by stipulating that consent was given, thus preventing the State from exploring the circumstances of the consent, and then argue for the first time on appeal that the consent given was not voluntary. Based on these circumstances, we conclude that defendant's stipulation included that the consent was given voluntarily.

Thus, although the original illegal stop was unconstitutional, Arroyo's subsequent voluntary consent purged the taint from the initial illegality, and the motion to suppress should not have been granted.

Accordingly, the order granting Arroyo's motion to suppress the evidence is reversed, and the case is remanded for trial.

GARFF and DAVIDSON, JJ., concur.