**STATE of Utah, Plaintiff and Respondent,**

v.

**Jose Francisco ARROYO, Defendant and Petitioner.**

No. 890128.

Supreme Court of Utah.

June 28, 1990.

Walter F. Bugden, Salt Lake City, for defendant and petitioner.

R. Paul Van Dam and Sandra L. Sjogren, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

This case is here on a writ of certiorari to review a decision of the court of appeals. The case presents important issues concerning the effect of consent searches and pretextual traffic stops under the Fourth Amendment to the United States Constitution.

## I. FACTS

On September 15, 1987, at about 4 p.m., Utah Highway Patrol Trooper Paul Mangelson was driving southbound on Interstate 15 near Nephi, Utah. Mangelson had completed his shift an hour earlier and was driving home when he observed a northbound pickup-camper on the opposite side of the freeway. Mangelson made a U-turn through the freeway's median strip and quickly caught up with the pickup which was the last vehicle in a group of two or three cars. Mangelson followed the pickup and then pulled beside it to observe its occupants and gauge its speed. The pickup's two occupants were both Hispanic, and the truck had out-of-state license plates. Mangelson stopped the pickup and cited Arroyo, the driver, for following too close and driving with an expired license.

Mangelson asked Arroyo's consent to search the truck, and Arroyo agreed.[1] The search uncovered approximately one kilogram of cocaine inside the passenger-side door panel of the pickup. Arroyo was arrested and charged with possession of a controlled substance with intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(i) (1986).

Arroyo moved to suppress the evidence on the ground that the traffic stop was a pretext for searching the truck for evidence of a more serious crime. The trial court found that the testimony at the suppression hearing "established the probability that no [traffic] violation occurred, and that the alleged violation was only a pretext asserted by the trooper to justify his stop of a vehicle with out-of-state license plates and with occupants of Latin origin." The trial court also ruled that the "[d]efendant consented to the search of the vehicle." Nevertheless, the court granted Arroyo's motion and ordered suppression of the evidence. The State filed an interlocutory appeal in the court of appeals challenging the suppression order.

## II. THE COURT OF APPEALS DECISION AND THE SUPPRESSION HEARING

The court of appeals held that the traffic stop was "an unconstitutional pretext." *State v. Arroyo*, 770 P.2d 153, 155 (Utah Ct.App.1989). The court stated, "We are persuaded that a reasonable officer would not have stopped Arroyo and cited him for 'following too closely' except for some unarticulated suspicion of more serious criminal activity." 770 P.2d at 155.

In addressing the issue of consent raised by the prosecution, the court of appeals found that defense counsel had blocked the prosecution's efforts to establish that Arroyo had consented to the search and had "[misled] the State and the [trial] court by stipulating that consent was given," thereby preventing the prosecution from exploring the voluntariness of the consent. The

1. The defendant admits in his brief the facts stated in the text, but does not admit that the

"consent" given by the defendant was "voluntary" under the appropriate legal standard.

court of appeals concluded that Arroyo had consented to the search and that the "consent" was "voluntary" and reversed the trial court's suppression order. 770 P.2d at 156.

Two paragraphs of the court of appeals' opinion are the crux of its resolution of this case:

> In this regard, we note Arroyo did not contest the State's argument at the suppression hearing that he voluntarily consented to the search of his truck. Arroyo, through his counsel[,] stipulated that he consented to the search. Arroyo's counsel objected when the State attempted to offer evidence to establish Arroyo's consent was voluntary, claiming it was not relevant as the only issue was whether the original stop was a pretext. As a result, the trial court limited testimony concerning the circumstances surrounding Arroyo's consent. The trial judge specifically found that Arroyo consented to the search of his truck, and there is nothing in the record to contradict this finding.
>
> For the first time on appeal, counsel now argues that Arroyo's consent was not voluntary as there was no "break in the causal connection between the illegality and the evidence thereby obtained." *United States v. Recalde*, 761 F.2d 1448, 1458 (10th Cir.1985). However, this argument should have been made below. A defendant cannot mislead the State and the court by stipulating that consent was given, thus preventing the State from exploring the circumstances of the consent, and then argue for the first time on appeal that the consent given was not voluntary. Based on these circumstances, we conclude that defendant's stipulation included that the consent was given voluntarily.

770 P.2d at 156.

The court of appeals misconstrued the record. The only time consent was mentioned at the suppression hearing occurred during the testimony of Trooper Mangelson:

Q. [by the prosecutor, Mr. Eyre]: Upon the vehicle stopping, what did you immediately do then?

A. I approached the vehicle. I asked for a driver's license. I made as many observations about the vehicle as I could.

Q. Describe what you observed.

A. I observed—

MR. BUGDEN [defense counsel]: Your Honor, for the record I think I would object to any further inquiry at this point. My motion only goes to the propriety and the lawfulness of the stop. And I think if that is what—

THE COURT: Was this a consent search?

MR. EYRE: Yes, Sir.

THE COURT: I think that is true, Counsel. It goes strictly to the stop.

MR. EYRE: Okay.

Q. Anything else about the stop that you recall that you have not previously testified to?

A. I don't believe so.

The court of appeals' opinion states, "Arroyo's counsel objected when the State attempted to offer evidence to establish Arroyo's consent was voluntary...." 770 P.2d at 156. The transcript of the suppression hearing reveals that prior to the objection by Arroyo's counsel, no mention had been made of consent and that the objection was made to a question concerning what observations Trooper Mangelson made as he approached Arroyo's vehicle. Defense counsel did not utter a word about voluntary consent during the course of the proceedings. Furthermore, as the court of appeals' opinion correctly states, it was the trial judge, not defense counsel, who "limited testimony concerning the circumstances surrounding" the issue of consent. 770 P.2d at 156.

▮ The court of appeals stated that the trial court found that "Arroyo consented to the search of the truck, and there is nothing in the record to contradict this finding." 770 P.2d at 156. Finding No. 18 in the trial court's findings and conclusions does state, "The Trooper requested permission to search the Defendant's vehicle, and

the Defendant consented to the search of the vehicle." However, the court of appeals applied the wrong standard of review in evaluating this finding. The standard of review for a trial court's finding of fact is that a finding shall not be set aside unless it is clearly erroneous. Utah R.Civ.P. 52(a); *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2573, at 689 (1971); *see also State v. Maurer*, 770 P.2d 981, 983 (Utah 1989). A finding not supported by substantial, competent evidence must be rejected. *50 W. Broadway Assoc. v. Redevelopment Agency*, 784 P.2d 1162, 1171 (Utah 1989).

The only "evidence" anywhere in this record which supports the finding of consent is the prosecutor's response to the judge's question about consent.[2] However, a prosecutor's assertion that consent was given is not evidence and cannot support a finding of consent. *See, e.g., Stading v. Equilease Corp.*, 471 So.2d 1379, 1379 (Fla. Dist.Ct.App.1985); *Leon Shaffer Golnick Advertising, Inc. v. Cedar*, 423 So.2d 1015, 1017 (Fla.Dist.Ct.App.1982) ("[Attorneys'] unsworn statements do not establish facts in the absence of stipulation. Trial judges cannot rely upon these unsworn statements as the basis for making factual determinations...."); *see also Caperon v. Tuttle*, 100 Utah 476, 484, 116 P.2d 402, 405–06 (1941); *see generally* 88 C.J.S. *Trial* § 181a, at 355 (1955). It follows that the trial court's finding of consent is clearly erroneous. The court of appeals' conclusion about consent is also erroneous.

In short, the record simply does not support the court of appeals' conclusion about the issue of consent. The record contains no suggestion that defense counsel "[misled] the State and the court" on the issue of consent and the record reveals no evidence concerning consent and no stipulation regarding consent. Consent should have been explored at the suppression hearing, but it was the trial court, not defense counsel, who preempted the prose-

cution's efforts to reach the issue. Therefore, the court of appeals was wrong in reversing the trial court's suppression order. Instead, the case should be remanded for an evidentiary hearing on the issue of consent.

### III. ADMISSIBILITY OF EVIDENCE OBTAINED IN A CONSENT SEARCH FOLLOWING POLICE ILLEGALITY

Since this case must be remanded for an evidentiary hearing, it is appropriate to define the parameters of the consent issue which should be explored by the trial court. *See, e.g., State v. Tarafa*, 720 P.2d 1368, 1370 (Utah 1986); *Lopes v. Lopes*, 30 Utah 2d 393, 395, 518 P.2d 687, 688 (1974).

### A. Exceptions to Warrant Requirement

Searches conducted "outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted); *State v. Harris*, 671 P.2d 175 (Utah 1983). The burden of establishing the existence of one of the exceptions to the warrant requirement is on the prosecution. *Harris*, 671 P.2d at 178. To establish the consent exception, the state must demonstrate that the consent was voluntary. *United States v. Carson*, 793 F.2d 1141, 1149 (10th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986); *State v. Iacono*, 725 P.2d 1375, 1377 (Utah 1986); *State v. Whittenback*, 621 P.2d 103, 106 (Utah 1980).

### B. Validity of Consent Following A Police Illegality

When the prosecution attempts to prove voluntary consent after an illegal police action (e.g., unlawful arrest or stop), the prosecution "has a much heavier burden to satisfy than when proving consent

---

**2.** The court of appeals' opinion asserts that defense counsel stipulated "that consent was given." 770 P.2d at 156. However, no stipulation on any issue by defense counsel appears anywhere in the record of this case.

to search" which does not follow police misconduct. *United States v. Melendez–Gonzalez,* 727 F.2d 407, 414 (5th Cir.1984) (citing *United States v. Ballard,* 573 F.2d 913, 916 (5th Cir.1978)). In this case, a law enforcement officer precipitated events which led to the search of Arroyo's vehicle. The trial court found that Trooper Mangelson's stop was not a lawful traffic stop but rather a pretext to allow Mangelson to investigate the car and its occupants. The court of appeals agreed, stating that under the totality of the circumstances, "a reasonable officer would not have stopped Arroyo and cited him for 'following too closely' except for some unarticulated suspicion of more serious criminal activity." 770 P.2d at 155. The trial court and the court of appeals were clearly correct on this issue—Trooper Mangelson's stop was an unconstitutional pretext.[3]

In cases involving the admissibility of evidence obtained as a consequence of police misconduct, the United States Supreme Court has eschewed a "but for" test. Under such a test, all evidence that would not have been discovered but for the initial police misconduct would be suppressed. In *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), the Supreme Court expressly declined to hold "that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *See also Dunaway v. New York,* 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). Justice Powell has stated that the Court's rejection of a "but for" test in *Wong Sun* "recognizes that in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule's deterrent purposes." *Brown,* 422 U.S. at 608–09, 95 S.Ct. at 2264 (Powell, J., concurring in part). Therefore, under certain circumstances, evidence obtained after police misconduct may be admissible.

Two factors determine whether consent to a search is lawfully obtained following initial police misconduct. The inquiry should focus on whether the consent was voluntary and whether the consent was obtained by police exploitation of the prior illegality. Evidence obtained in searches following police illegality must meet both tests to be admissible. 3 W. LaFave, *Search and Seizure* § 8.2(d), at 190 (2d ed.1987).

### 1. Voluntary consent

The case law holds that a consent which is not voluntarily given is invalid. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 233, 93 S.Ct. 2041, 2050, 36 L.Ed.2d 854 (1973); *United States v. Carson,* 793 F.2d 1141, 1149 (10th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986); *State v. Valdez,* 748 P.2d 1050,

---

**3.** The following findings of fact justify the conclusion that the stop was a pretext:

 8. As a result [of] Trooper Mangelson's training at [a] seminar, he admitted that whenever he observed an Hispanic individual driving a vehicle he wanted to stop the vehicle. The Trooper also admitted that once he stopped an Hispanic driver, 80% of the time he requested permission to search the vehicle.

 ....

 14. Under cross-examination, the Trooper denied that it was his normal procedure when issuing a citation to an individual for "Following too.Close" to record the license plate of the front car. However, the Trooper's denial on this point was contradicted by tape recorded testimony from the Trooper at the preliminary hearing held in this matter. The Trooper admitted that he had not recorded the license plate number of the front car in this case.

 15. The Defendant testified that he was at least 85 to 95 feet or nine car lengths, behind the vehicle immediately in front of his own. The Court finds this testimony to be credible.

 16. In contrast, the Court is unpersuaded that Trooper Mangelson rightfully determined that the Defendant was "Following too Close" or that any other attested facts preponderated to the level necessary to permit a constitutional stop of the Defendant's vehicle. Moreover, the Court finds that the Trooper's own testimony established the probability that no violation of law occurred, and that the alleged violation was only a pretext asserted by the Trooper to justify his stop of a vehicle with out of state license plates and with occupants of Latin origin.

1056 (Utah 1987); *State v. Whittenback,* 621 P.2d 103, 106 (Utah 1980). Generally, whether the requisite voluntariness exists depends on "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of" police conduct. *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047; *see also State v. Strain,* 779 P.2d 221, 225 (Utah 1989).

### 2. Exploitation of primary illegality

A second factor is whether consent was obtained through police exploitation of the primary or antecedent police illegality. A few courts have not accepted the second factor. The Tenth Circuit in *United States v. Carson,* 793 F.2d 1141 (10th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986), focused exclusively on the voluntariness of the consent in determining whether the taint of the prior police illegality had been purged. The court stated:

> We hold that *voluntary* consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of the primary taint.
>
> . . . .
>
> . . . The exploitation issue focuses solely on defendant's *grant* of consent, not on the bare request, or the reasons underlying it. While the police may exert coercion in the *manner* in which they *request* defendant's consent, the request itself, even if motivated by the fruits of the prior illegality, is not exploitation.

793 F.2d at 1147–49 (emphasis in original). The Utah Court of Appeals followed this approach in *State v. Sierra,* 754 P.2d 972 (Utah Ct.App.1988). However, we disagree with the rule established in *Sierra* because it fails to give proper weight to Fourth Amendment values, and we address the issue of the proper standard to be applied in this jurisdiction under the second prong of the analysis.

Professor LaFave has stated, "The apparent and unfortunate conclusion in *Carson,* therefore, is that exploitation can never occur in the sense of the illegal search strongly influencing police in thereafter seeking a particular consent, but only in the sense of bringing added pressure to bear upon the person from whom the consent is sought." 3 W. LaFave, *Search and Seizure* § 8.2(d), at 19–20 n. 88.1 (Supp. 1990). For example, under *Carson,* police have power to conduct warrantless searches without probable cause and then use the fruits of illegal searches by obtaining a voluntary consent after the search has already occurred. Police should not be permitted to ratify their own illegal conduct by merely obtaining a consent after the illegality has occurred.

Indeed, *Carson* seems to be antithetical to the purpose of the exclusionary rule. In *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960), the Supreme Court stated, "[The rule's] purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." A further purpose of the exclusionary rule implicated here, as enunciated in *Terry v. Ohio,* 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968), is to prevent making a court a "party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions." Neither of these purposes is effectuated by ignoring police misconduct, which is what the *Carson* approach encourages.

■ The exclusionary rule protects not only those accused of a crime but also those whose only "crime" may be fitting a "profile" which police use to determine whom to search. In *United States v. Miller,* 821 F.2d 546 (11th Cir.1987), the Eleventh Circuit stated:

> The record does not reveal how many unsuccessful searches Trooper Vogel has conducted or how many innocent travelers the officer has detained. Common sense suggests that those numbers may be significant. As well as protecting alleged criminals who are wrongfully stopped or searched, the Fourth Amend-

ment of the Constitution protects these innocent citizens as well.

821 F.2d at 550.

The basis for the second part of the two-part analysis is found in the "fruit of the poisonous tree" doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), which stated that a trial court must determine in such a case " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. at 488, 83 S.Ct. at 417 (quoting Maguire, *Evidence of Guilt* 221 (1959)). The "fruit of the poisonous tree" doctrine has been extended to invalidate consents which, despite being voluntary, are nonetheless the exploitation of a prior police illegality.

*Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), is an example of the application of the second part of the two-part test. In *Royer,* a suspect who matched a drug courier profile was detained at an airport by two police officers who requested and retained the suspect's airline ticket and driver's license. The officers asked Royer to accompany them to a room, later characterized as a "large storage closet," in the airport. The officers retrieved Royer's luggage from the airline and obtained Royer's consent to open and search the luggage. The search uncovered narcotics. The trial court subsequently found that Royer's consent was "freely and voluntarily given" and therefore denied a suppression motion. The Supreme Court held that the detention of Royer constituted an illegal seizure. 460 U.S. at 507, 103 S.Ct. at 1329. Without questioning the assertion that Royer's consent was "freely

and voluntarily given," the plurality opinion concluded that "the consent was tainted by the illegality and was ineffective to justify the search." 460 U.S. at 507–08, 103 S.Ct. at 1329. Thus, the exploitation of the illegality of the detention was the determinative factor, despite the voluntariness of the consent.

Similarly, in *People v. Odom,* 83 Ill. App.3d 1022, 39 Ill.Dec. 406, 404 N.E.2d 997 (1980), the court held that the defendant was illegally arrested by police who lacked sufficient probable cause to effect an arrest. The defendant had given officers consent to search a jacket in a vehicle. The officers found drug paraphernalia. The trial court held that "the items found pursuant to the search of [the] jacket were not the fruit of [the] illegal arrest but were, rather, obtained as a result of ... voluntary consent," which the trial court stated was an "independent intervening" factor. 83 Ill.App.3d at 1025, 39 Ill.Dec. at 409, 404 N.E.2d at 1000. The appellate court agreed that the consent was voluntary but stated:

However, a finding that the defendant's consent to search was voluntarily given is but one step in the determination of the propriety of the search, because even if the consent were voluntary it still may have been obtained by the exploitation of an illegal arrest.... Therefore, the question before us is whether Odom's consent was obtained by the exploitation of an illegal arrest, or "by means sufficiently distinguishable to be purged of the primary taint."

83 Ill.App.3d at 1027–28, 39 Ill.Dec. at 411, 404 N.E.2d at 1002 (quoting *Brown v. Illinois,* 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975)).[4] The court held

---

**4.** In analyzing whether an exploitation of a primary illegality has occurred, many courts use the criteria listed by the Supreme Court in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). *See, e.g., State v. Cates,* 202 Conn. 615, 621–23, 522 A.2d 788, 792–93 (1987); *People v. Odom,* 83 Ill.App.3d 1022, 1028, 39 Ill.Dec. 406, 411, 404 N.E.2d 997, 1002 (1980); *State v. Mitchell,* 360 So.2d 189, 191 (La.1978); *State v. McKenzie,* 440 A.2d 1072, 1077 (Me. 1982); *People v. Borges,* 69 N.Y.2d 1031, 1033, 517 N.Y.S.2d 914, 916, 511 N.E.2d 58, 59–60

(1987); *Reyes v. State,* 741 S.W.2d 414, 431 (Tex.Crim.App.1987). *Brown* concerned the question of when a confession is the fruit of a prior illegal arrest. The Court rejected a per se rule that the giving of *Miranda* warnings is a sufficient break in the chain of events between the arrest and the confession. 422 U.S. at 603, 95 S.Ct. at 2261. In so doing, the Court stated reasons which are also applicable to a consent to search which is preceded by a police illegality:

that the consent had been tainted because police illegally arrested the defendant at gunpoint, even though there was no indication he was armed and less than a minute separated the arrest and the consent. On this basis, the court reversed the defendant's conviction.

Numerous other courts have adopted the same basic analysis. *See, e.g., United States v. Miller,* 821 F.2d 546 (11th Cir. 1987); *United States v. Melendez–Gonzalez,* 727 F.2d 407, 414 (5th Cir.1984) ("In addition to proving valid and voluntary consent to search, the Government must also establish the existence of intervening factors which prove that the consent was sufficiently attenuated from the illegal stop."); *United States v. Thompson,* 712 F.2d 1356, 1361 (11th Cir.1983) ("Because [defendant] was illegally detained when he gave his consent ... the district court's conclusion that [the] consent was voluntary is insufficient to validate the seizure and search. [Defendant's] consent must also be untainted by the illegal detention."); *United States v. Taheri,* 648 F.2d 598, 601 (9th Cir.1981) ("[E]vidence found as a result of ... consent must nonetheless be suppressed if the unconstitutional conduct was not sufficiently attenuated from the subsequent seizure...."); *United States v. Hearn,* 496 F.2d 236, 243–44 (6th Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 622, 42

L.Ed.2d 642 (1974) ("[I]nformation gained by law enforcement officers during an illegal search cannot be used in a derivative manner to obtain other evidence...."); *State v. Cates,* 202 Conn. 615, 621, 522 A.2d 788, 791 (1987) ("[T]he mere fact a *consent* to a search or a seizure is voluntary does not necessarily remove the taint [of a prior illegality]." (Emphasis in original.)); *State v. Raheem,* 464 So.2d 293, 297 (La.1985) ("When made after an illegal detention or search, consent to search, even if voluntary, is valid only if it was the product of a free will and not the result of an exploitation of the previous illegality."); *State v. McKenzie,* 440 A.2d 1072, 1077 (Me.1982) ("[T]he obvious connection between the invalid stop and the seizure of [the evidence] has not been dissipated by the defendant's consent to search...."); *People v. Borges,* 69 N.Y.2d 1031, 1033, 517 N.Y.S.2d 914, 916, 511 N.E.2d 58, 59 (1987) ("Although the voluntariness of the consent is an important factor in the court's determination of attenuation, it is not dispositive...."); *Reyes v. State,* 741 S.W.2d 414, 431 (Tex.Crim.App.1987) ("The better test is, of course, that evidence obtained by the purported consent should not be held admissible unless it is determined that the consent was both voluntary and not an exploitation of the prior illegality.").

Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at

trial by the simple expedient of giving Miranda warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings in effect, a "cure-all," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words." 422 U.S. at 601–03, 95 S.Ct. at 2260–61 (citations omitted). The Court concluded that *Miranda* warnings were only one factor to be considered. 422 U.S. at 603, 95 S.Ct. at 2261. The Court listed "temporal proximity of the arrest and the confession, the presence of intervening circumstances [and] the purpose and flagrancy of the official misconduct" as relevant factors in such cases. 422 U.S. at 603–04, 95 S.Ct. at 2261–62. Professor LaFave has stated that similar factors are applicable to consent to search cases. 3 W. LaFave, *Search and Seizure* § 8.2(d), at 193–94 (2d ed.1987). These factors should be considered in determining if there has been an exploitation of the primary illegality in such cases.

In sum, we hold that the court of appeals' adoption of the *Carson* test in *Sierra* was erroneous.

### IV. SCOPE OF CONSENT

 Finally, a search supported by voluntary consent which is not an exploitation of the primary illegality may still be found invalid if the search exceeds the scope of the consent. Professor LaFave stated:

> When the police are relying upon consent as a basis for their warrantless search, they have no more authority than they have been given by the consent.
>
> ....
>
> Assuming ... that a general and unqualified consent was given, then the boundaries of the place referred to mark the outer physical limits of the authorized search. Even within those limits, however, the police do not have carte blanche to do whatever they please. Certainly they may not engage in search activity which involves the destruction of property, and this would seem to bar breaking into locked containers.

3 W. LaFave, *Search and Seizure* § 8.1(c), at 160–61 (2d ed.1987); *see, e.g., State v. Koucoules*, 343 A.2d 860, 867 (Me.1974) ("[A] general consent to search ... would not ... sanction ... the tearing down of walls....").

Here, there is nothing in the record that suggests what the limits of Trooper Mangelson's search were.

### V. CONCLUSION

In sum, the decision of the court of appeals is reversed, and the case is remanded to the trial court for an evidentiary hearing to determine the voluntariness of the consent, whether the consent was an exploitation of the illegal stop, and the scope of the consent.

Reversed and remanded.

HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

HALL, C.J., concurs in the result.