STATE of Utah, Plaintiff and Appellee,

v.

James Ronald BELLO, Defendant and Appellant.

No. 920830–CA.

Court of Appeals of Utah.

March 15, 1994.

Ronald J. Yengich and Hakeem Ishola, Salt Lake City, for defendant and appellant.

Jan Graham and Marian Decker, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

James Ronald Bello appeals his conviction for possession of a controlled substance, a second degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1990). We reverse the trial court's denial of Bello's motion to suppress the evidence and remand for further proceedings.

## FACTS

On March 15, 1991, at approximately 11:15 a.m., Deputy Phil Barney was traveling west on I–70 when he noticed Bello's eastbound pickup truck temporarily drift so that it straddled both eastbound lanes of traffic. Barney turned his vehicle around, activated his video recorder, and pursued the truck in order to stop it and determine whether the driver of the vehicle was under the influence of alcohol, drowsy, or otherwise impaired.

For the approximately two miles that Barney followed the truck, he observed no further problems that might indicate an impaired driver, and he stated at the hearing on the motion to suppress that there were extreme wind conditions that day that might account for the temporary drifting of the truck into the other lane.

After pulling him over, Barney informed Bello that he had been driving outside the regular lane of traffic. Bello acknowledged that this may have occurred, but stated that he was having difficulties controlling the vehicle due to the wind. Barney noted during this initial conversation that the vehicle's front windshield was cracked and requested to see his driver's license and registration, both of which Bello produced. The car was registered to Bobby Randall of Arcadia, California.

Barney testified at the suppression hearing that he smelled raw marijuana when he first approached the truck, and again when he passed by the camper portion of the pickup on his way back to his vehicle to issue a warning citation for the cracked windshield and weaving. Barney requested that the dispatcher attempt to contact the owner of the vehicle, but the dispatcher informed him that there was no telephone listing for that individual.

When Barney returned to the truck with the citation he again smelled marijuana and asked Bello if he could look in the vehicle. Bello responded, "Yes, sir." After looking through the cab area of the truck, Barney moved to the rear of the vehicle and pointed to the lock on the camper shell. Bello asked if Barney wanted the key and when Barney said that he did, Bello retrieved the key from the ignition. When Barney inspected the camper area of the truck he found more than 100 pounds of marijuana.

Bello was arrested and charged with possession of marijuana. He later filed a motion to suppress the evidence seized as a result of the warrantless search of his vehicle. The trial court denied the motion, ruling that the initial traffic stop was pursuant to a legitimate law enforcement function, and that the officer "upon smelling the odor of raw mari-

juana, had probable cause to believe the Defendant was engaged in possession of controlled substances." The trial court denied Bello's motion for reconsideration.

Following a bench trial on April 29, 1992, Bello was convicted as charged. On November 24, 1992, the trial court reduced Bello's conviction one degree pursuant to Utah Code Ann. § 76–3–402(1) (Supp.1993) and sentenced him to zero to five years in the Utah State Prison.

## ISSUES ON APPEAL

Bello raises seven issues on appeal: (1) Was the initial stop lawful? (2) Was the officer justified in detaining Bello further after determining that Bello was not impaired in any way? (3) Did Bello consent to the search? (4) Was Bello's consent invalid because it was not sufficiently attenuated from the allegedly unlawful stop? (5) Did the search conducted by Barney exceed the scope of Bello's consent? (6) Did the warrantless vehicle search violate the Utah Constitution? and (7) Are the district court's factual findings and conclusions of law insufficiently detailed? Our determinations with respect to the lawfulness of the initial stop and attenuation of consent render consideration of the remaining issues unnecessary, and accordingly, we do not reach them.

## STANDARD OF REVIEW

The Utah Supreme Court recently clarified the standard of review applicable to reasonable suspicion determinations in the context of an investigatory stop. *State v. Pena*, 869 P.2d 932 (Utah 1994). The court reiterated that the factual findings underlying the trial court's decision with respect to a motion to suppress the evidence are reviewed under the deferential "clearly erroneous" standard. *Id.* at 939 n. 4; *accord State v. Thurman*, 846 P.2d 1256, 1272 (Utah 1993). Furthermore,

the "determination of whether a specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewable non-deferentially for correctness."[1] *Pena*, at 939; *Thurman*, 846 P.2d at 1272. After concluding that the question of reasonable suspicion is essentially a determination of law, the court further stated that "the reasonable-suspicion legal standard is one that conveys a measure of discretion to the trial judge when applying that standard to a given set of facts. Precisely how much discretion we cannot say...." *Pena*, at 939.

## ANALYSIS

### Initial Stop

It is by now well established that the Fourth Amendment applies to investigatory stops of vehicles "regardless of the reason for the stop or the brevity of the detention." *State v. Talbot*, 792 P.2d 489, 491 (Utah App.1990) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979)); *accord State v. Sierra*, 754 P.2d 972, 975 (Utah App.1988), *overruled in part on other grounds by State v. Arroyo*, 796 P.2d 684 (Utah 1990). In order to comply with the Fourth Amendment's prohibition against unreasonable searches and seizures, the State must establish that the stop in question was either (1) incident to a traffic violation committed in the officer's presence, or (2) based on specific, articulable facts and reasonable inferences derived from these facts that would lead a reasonable officer to conclude that the occupant of the vehicle had committed, or was about to commit a crime. *State v. Lopez*, 831 P.2d 1040, 1043 (Utah App.), *cert. granted*, 843 P.2d 1042 (Utah 1992); *Talbot*, 792 P.2d at 491; *Sierra*, 754 P.2d at 975.

In the instant case, the State contends that both grounds for constitutionally stopping a

---

1. This mixed standard of review is also applicable to the trial court's determination of voluntary consent. The *Pena* court stated that the trial court is not granted the same degree of discretion in evaluating voluntary consent questions as with reasonable suspicion determinations because

> while there [are] varying fact patterns that would be relevant to determinations of volun-

tariness of consent, they [are] not so unmanageable in their variety as to outweigh the interest in having uniform legal rules regarding consent to search, given the substantial Fourth Amendment interests lost as a result of such consents.

*State v. Pena*, 869 P.2d 932, 939 (Utah 1994) (citing *State v. Thurman*, 846 P.2d 1256, 1271 (Utah 1993)).

vehicle are present. The State claims that when Bello's truck briefly crossed the center line of the eastbound lanes, he violated a statute requiring that a vehicle be operated "as nearly as practical entirely within a single lane ..." Utah Code Ann. § 41–6–61(1) (1993). Next, the State argues that Bello's weaving provided Deputy Barney with reasonable suspicion that Bello was driving while impaired by drugs or alcohol.

■ With respect to the argument that Bello could be legitimately stopped for violating section 41–6–61(1), we note that the statute requires only that a vehicle remain entirely in a single lane "as nearly as practical." It was extremely windy on the morning in question and Bello's truck had a camper shell that caused it to catch the wind more easily than other vehicles. These facts, in combination with the fact that in the two miles that Barney followed Bello he observed no further weaving, lead us to conclude that the single instance of weaving seen by Barney could not constitute a violation of section 41–6–61(1) and therefore cannot serve as the constitutional basis for stopping Bello's truck.

■ The State's second argument in justification of the stop relies upon the existence of reasonable suspicion that Bello was involved in criminal activity—driving while under the influence of drugs or alcohol. In determining whether reasonable suspicion exists, this court looks to the totality of the circumstances present at the time the officer decided to stop the vehicle. *Sierra*, 754 P.2d at 975. The officer must be able to articulate facts and inferences from these facts that would " 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate. Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court

has consistently refused to sanction." *State v. Trujillo,* 739 P.2d 85, 88 (Utah App.1987) (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). This standard is an objective one—"simple ' "good faith on the part of the arresting officer is not enough." ' " *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880 (quoting *Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964) (quoting *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959))).

The State bases its claim of reasonable suspicion of criminal activity on the single incident of weaving witnessed by Barney. In light of the totality of circumstances, this fact is inadequate to justify the stop of Bello's vehicle. Barney's initial suspicion, triggered by a minor driving aberration, was not corroborated in any way during the ensuing pursuit. The extreme wind conditions, the type of vehicle driven by Bello, and the complete absence of any further traffic violations or any other indicia of impairment during the two miles Barney pursued Bello persuade this court that the trial court erred in concluding from those sparse facts that there was reasonable suspicion to justify the traffic stop. As the Tenth Circuit recently noted, "[I]f failure to follow a perfect vector down the highway ... were sufficient reason[ ] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." *United States v. Lyons,* 7 F.3d 973, 976 (10th Cir.1993).[2]

### Consent to Search

■ Despite the illegal stop, it is constitutionally permissible to admit the evidence recovered as a result of the search of Bello's vehicle if both prongs of a two-part test are satisfied: (1) the consent was voluntarily given,[3] and (2) the consent was not obtained

---

2. Because we conclude there was not reasonable suspicion for the stop we do not address Bello's additional argument that the stop was pretextual. *See United States v. Lyons,* 7 F.3d 973, 975–76 (10th Cir.1993); *State v. Arroyo,* 770 P.2d 153, 155 (Utah App.1989), *overruled on other grounds, State v. Arroyo,* 796 P.2d 684 (Utah 1990); *State v. Sierra,* 754 P.2d 972, 977–80 (Utah App.1988), *overruled in part on other grounds by State v. Arroyo,* 796 P.2d 684 (Utah 1990).

3. Bello argues for the first time on appeal that his consent to search was not voluntary, but rather was "mere acquiescence to the demands of a police officer." This court need not consider an issue raised for the first time on appeal unless the defendant "persuades us the trial court committed plain error or that there are other exceptional circumstances." *State v. Sepulveda,* 842 P.2d 913, 917–18 (Utah App.1992); *accord State v. Carter,* 707 P.2d 656, 660 (Utah

through "exploitation" of the prior illegal police conduct. *State v. Thurman*, 846 P.2d 1256, 1262 (Utah 1993); *State v. Arroyo*, 796 P.2d 684, 688 (Utah 1990). The rationale behind the application of this test is that " 'in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule's deterrent purposes.' " *Arroyo*, 796 P.2d at 688 (quoting *Brown v. Illinois*, 422 U.S. 590, 608–09, 95 S.Ct. 2254, 2264, 45 L.Ed.2d 416 (1975)).

■ We analyze only the second prong, which requires that Bello's consent cannot have been the product of police exploitation of the illegal stop, "or in other words, 'whether the "taint" of the Fourth Amendment violation was sufficiently attenuated to permit introduction of the evidence.' " [4] *Thurman*, 846 P.2d at 1263 (quoting *New York v. Harris*, 495 U.S. 14, 19, 110 S.Ct. 1640, 1643–44, 109 L.Ed.2d 13 (1990)). There are three factors to consider in determining whether the consent in this case was sufficiently attenuated: (1) the "purpose and flagrancy" of the stop, (2) the amount of time that had elapsed between the stop and the consent, and (3) the presence or absence of "intervening circumstances." *Id.; Arroyo*, 796 P.2d at 691 n. 4 (citing *Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62, and 3 Wayne R. LaFave, *Search and Seizure* § 8.2(d), at 193–94 (2d ed. 1987)).

The Utah Supreme Court has explained the "purpose and flagrancy" factor as directly bearing upon the "deterrent value" of suppression. *Thurman*, 846 P.2d at 1263. Specifically, "if the misconduct is flagrantly abusive, there is a greater likelihood that the police engaged in the conduct as a pretext for collateral objectives, and suppressing the resulting evidence will have a greater likelihood

of deterring similar misconduct in the future." *Id.* at 1264. While the police misconduct in this case is conduct that should be discouraged, it does not fall into the category of flagrant abuse. We conclude, after balancing the value of deterring what virtually amounts to a random stop against the lack of a flagrant abuse or improper motivation, that this factor is neutral.

With respect to the temporal proximity factor, the record establishes that very little time passed between the initial stop and the request for permission to search the vehicle. Barney asked a few questions about the reason for the weaving, the identity of the vehicle's owner, and Bello's destination, along with requesting his license and registration. A few minutes later, after checking the information provided by Bello, Barney returned and asked if he could look in the vehicle. As in *State v. Sims*, 808 P.2d 141 (Utah App. 1991), *cert. granted*, 853 P.2d 897 (Utah 1993), a case with facts quite similar to the instant case, "[t]he consent was obtained within minutes of the illegal stop, and not even under [a] clear error standard of review could the trial court find enough time between the stop and the grant of consent to attenuate the relationship between the two." *Id.* at 151; *see also State v. Godina–Luna*, 826 P.2d 652, 656 (Utah App.1992) ("The consent occurred during an ongoing illegal seizure, thus no time factor separated the illegality from the consent."). Therefore, the second factor weighs in favor of suppressing the evidence.

The final factor in the exploitation analysis, whether there are intervening circumstances, also supports a conclusion that the evidence should be suppressed. The intervening circumstances must be independent of the illegal police conduct. *Sims*, 808 P.2d at 151.

1985) ("[W]here a defendant fails to assert a particular ground for suppressing unlawfully obtained evidence in the trial court, an appellate court will not consider that ground on appeal."). Bello has not asserted plain error on appeal and we therefore do not address this issue.

4. The trial court did not make express findings on the issue of attenuation. However, the material facts in this case are not contested and the record, composed of the transcripts of the sup-

pression hearing and the video tape of the stop made by Barney, is sufficiently detailed and comprehensive that we may resolve this issue. *State v. Small*, 829 P.2d 129, 131–32 (Utah App.), *cert. denied*, 843 P.2d 1042 (Utah 1992); *State v. Sims*, 808 P.2d 141, 151 (Utah App.1991), *cert. granted*, 853 P.2d 897 (Utah 1993). In resolving the issue on the basis of the record before us, we do so as a matter of law. *Sims v. State Tax Comm'n*, 841 P.2d 6, 10 (Utah 1992).

Therefore, the fact that Barney smelled marijuana when he approached the car is not an intervening circumstance because the opportunity to smell the marijuana arose directly from the illegal stop. *See id.* There are no facts in the record indicating that there were any other independent intervening circumstances, and accordingly, there was no opportunity for the taint from the illegal stop to dissipate through these means.

We conclude after reviewing the three exploitation analysis factors that there was not sufficient attenuation between the illegal stop and the consent to search and therefore the evidence seized in this case must be excluded pursuant to *State v. Larocco,* 794 P.2d 460, 472 (Utah 1990).

## CONCLUSION

After careful review of the record, we conclude that neither of the grounds asserted by the State in justification of the stop of Bello's vehicle has merit. Bello did not violate section 41–6–61(1) by weaving once in high winds, and similarly, this single occurrence does not provide reasonable suspicion that Bello was driving under the influence justifying the stop of Bello's vehicle. We further find that the taint of this illegal stop was not attenuated by time or intervening circumstances, and Bello's consent to search was therefore invalid. Accordingly, we reverse the trial court's denial of Bello's motion to suppress the evidence and remand this matter for a new trial.

BILLINGS and DAVIS, JJ., concur.