**STATE of Utah, Plaintiff and Respondent,**

v.

**Jorge Francis AQUILAR, Defendant and Appellant.**

No. 870327–CA.

Court of Appeals of Utah.

July 19, 1988.

Claudia Laycock, Aldrich, Nelson, Weight & Esplin, Provo, for defendant and appellant.

David L. Wilkinson, State Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Governmental Affairs Div., for plaintiff and respondent.

Before GREENWOOD, GARFF and BENCH, JJ.

OPINION

GREENWOOD, Judge:

Jorge Aquilar appeals from his conviction of possession of a controlled substance with intent to distribute for value, a third degree felony in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1987). Aquilar contends that the stop and subsequent search and seizure of his vehicle violated his fourth amendment rights. We affirm.

On March 14, 1987 at about 8:30 a.m., Officer Paul Mangleson observed Aquilar walking on the highway near Nephi, Utah carrying a gasoline can. Officer Mangleson made a U-turn and approached Aquilar at four or five miles per hour to offer him a ride. Aquilar did not make eye contact, and the officer believed Aquilar was avoiding him. The officer parked his car and after twenty minutes did not see Aquilar return for more gasoline. Another officer stopped to talk to Officer Mangelson and, when asked, advised Officer Mangelson he had seen a person put gas in a blue and white van and then drive northbound. Officer Mangelson radioed dispatch to have another officer take a closer look at the van. Officer Doug Rawlinson heard Officer Mangelson's radio dispatch and several minutes later saw the van coming from the south on the opposite side of the freeway.

Officer Rawlinson testified that two cars were in front of the van and estimated that the cars were traveling about 55 to 60 miles per hour. Officer Rawlinson also stated that the van was about two car lengths behind the second vehicle, which the officer thought was too close. Officer Rawlinson pulled a U-turn on the freeway and caught up with the van. He testified that when he caught up with the vehicle it was on the white line which marks the emergency lane. He then noticed the vehicle several times drift from its lane to the white emergency lane line. The officer activated his overhead lights and pulled Aquilar over because he thought Aquilar was a drunk driver.

After the stop, the officer did not smell alcohol on Aquilar's breath, did not require Aquilar to perform field sobriety tests and determined that Aquilar was not intoxicated. Aquilar gave the officer his California driver's license, but stated that he did not have the vehicle's registration. The officer invited Aquilar to his patrol car after Aquilar was unable to produce the registration for the van or to name the owner of the van. When Aquilar went to the patrol car, he gave the officer his written consent to search the van. A search of the van revealed 383 pounds of marijuana.

Aquilar filed a motion to suppress the evidence seized in the search of the van. At the suppression hearing, Aquilar testified that he did not recall driving in any manner which would have justified a stop by the highway patrol. He also testified that he voluntarily consented to the search of the van. The court found that "Officer Rawlinson did have cause to pull the defendant over and question" and denied the motion to suppress.

On appeal, Aquilar claims that the stop of his vehicle was not based upon a reasonable suspicion that Aquilar had committed or was about to commit a crime, and, consequently, that the subsequent search of his vehicle violated his fourth amendment rights.[1] The State contends that Aquilar

failed to preserve his objection to the admission of the seized evidence at trial, and that even if the stop was illegal, the evidence seized from Aquilar's vehicle was properly admitted because Aquilar consented to the search of the vehicle.

## OBJECTION

We first consider whether Aquilar preserved his objection at trial to the admissibility of the evidence seized. This Court and the Utah Supreme Court have held that a defendant's failure to object to the admissibility of evidence at trial does not constitute a waiver of his fourth amendment claim to the admissibility of that evidence if the same judge presided at the suppression hearing and at trial. *State v. Johnson,* 748 P.2d 1069, 1071–72 (Utah 1987); *State v. Griffin,* 754 P.2d 965, 967 (Utah Ct.App.1988).

■ In this case, defendant did not provide this Court with a copy of the trial transcript. Consequently, we cannot determine whether defendant objected to the admissibility of the evidence again at trial. However, the same judge presided at the suppression hearing and at trial. Accordingly, even if defendant failed to object at trial, that failure would not constitute a waiver. Therefore, we hold that defendant did not fail to preserve his objection to the admissibility of the evidence seized during the search of the van.

## CONSENT

We next consider whether Aquilar's consent to the search of the van was sufficient to purge the stop of any taint. For purposes of discussion of this issue, we will assume that the initial stop was illegal.

In determining if consent is sufficient to purge the taint of a prior illegal stop, the court must consider whether the evidence was "come at by exploitation of [the prior] illegality or instead by means sufficiently distinguishable to be purged of the primary

---

1. Although Aquilar recited the Utah Constitution's fourth amendment provision in his brief, he did not argue that the Utah Constitution yields a different result than the United States

Constitution. We therefore confine our analysis to the protections granted under the United States Constitution. *See State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988).

taint." *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). It is well-settled that under the fourth amendment a search pursuant to voluntary consent is valid. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *State v. Sierra*, 754 P.2d 972, 980 (Utah Ct.App.1988). Further, to justify a search of an individual based on consent, the State must demonstrate that "the consent was in fact voluntarily given and not the result of duress or coercion, express or implied." *Schneckloth*, 412 U.S. at 248, 93 S.Ct. at 2059. In *United States v. Carson*, 793 F.2d 1141, 1147–48 (10th Cir.1986) *cert. denied,* — U.S. —, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986), the Tenth Circuit held that *"voluntary* consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of the primary taint." (Emphasis in original.) This Court adopted the *Carson* rationale in *Sierra*, where a stop of a vehicle was found illegal, but the matter was remanded for determination of whether the consent to a search was voluntary. *Sierra*, 754 P.2d at 980–81.

In the present case, Aquilar signed a written consent form which stated that he authorized Officers Rawlinson and Mangelson to search his vehicle. The form also stated "I am giving this written permission to these officers freely and voluntarily, without any threats or promises." At the suppression hearing, Aquilar testified through an interpreter as follows:

Q  And it is true is it not that when the officer asked you if he could search your van you told him yes?

A  Yes.

Q  And it is true that when he went back to his car with you and pulled out the written consent form that you understood what he was saying when he read that form to you?

A  Yes, he understood what they were talking about and so he signed it.

Q  And it is true is it not that when he was going through that form with you the second time you interrupted him?

A  He doesn't remember.

Q  Would it refresh your memory if I were to tell you that he said yes I understand you want to search my van?

A  Yes.

Q  And it is true is it not that you voluntarily gave your permission to the police officers to search your van?

A  Yes he said yes he understand wasn't any problem that he couldn't do it and he signed the paper [sic].

■ Aquilar does not contend on appeal that his consent was not voluntary. Aquilar testified at the suppression hearing that he consented to the search of the van voluntarily and not because of duress or coercion. Therefore, because Aquilar concedes that the consent was voluntary and because there is no evidence to the contrary, we conclude, as a matter of law, that the consent was voluntary. We agree with the Tenth Circuit that *voluntary* consent is sufficiently distinguishable from any prior illegality to purge the taint of that illegality. Therefore, we hold that because Aquilar's consent to the search of the van was clearly voluntary, that consent purged the taint of any prior illegality. Accordingly, the trial court correctly denied the motion to suppress the evidence seized pursuant to the search of the van.

Because our resolution of this issue is dispositive, we decline to address whether the initial stop was a violation of Aquilar's fourth amendment rights. "It is a fundamental rule that this Court should avoid addressing constitutional issues unless required to do so." *State v. Anderson*, 701 P.2d 1099, 1103 (Utah 1985).

Affirmed.

BENCH and GARFF, JJ., concur.