**STATE of Utah, Plaintiff and Appellee,**

v.

**Jacky BOBO, Defendant and Appellant.**

**No. 890606–CA.**

Court of Appeals of Utah.

Dec. 12, 1990.

Ronald J. Yengich (argued), Yengich, Rich, Xaiz & Metos, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., Dan R. Larsen (argued), Asst. Atty. Gen., for plaintiff and appellee.

Before GREENWOOD, JACKSON and ORME, JJ.

ORME, Judge:

Defendant appeals his convictions for possession of a controlled substance with intent to distribute, a second degree felony, and unlawful possession of controlled substances without tax stamps affixed, a third degree felony. Defendant's conviction was affirmed by this court in *State v. Bobo*, 131 Utah Adv.Rep. 25 (Utah Ct.App.1990) (per curiam), on the ground the claimed conditional nature of defendant's guilty plea was not shown in the record. *Id.* at 25. *See State v. Sery*, 758 P.2d 935, 938 (Utah Ct.App.1988). That opinion was withdrawn and the matter recalendared when the conditional nature of defendant's guilty plea was demonstrated in conjunction with a petition for rehearing. At this juncture, defendant principally challenges the denial of a motion to suppress and, in response to the state's position, reasserts the conditional nature of his guilty plea. We affirm.

## FACTS

On December 6, 1988, two officers from the Layton City Police Department responded to a private security guard's report of a loud party involving juveniles, drugs, and alcohol at defendant's home. Upon arrival, officers heard the familiar sounds of a loud party in progress and knocked on defendant's door. After the officers explained the purpose of their visit, defendant invited the officers in to verify that there were no juveniles present. Once inside, the officers lost interest in the age of the attendees when they saw a pipe in plain view on a counter, which, upon closer examination, smelled of marijuana. Defendant was placed under arrest. When he was searched incident to the arrest, a small vial containing a white substance was found. Defendant was handcuffed and detained in his living room. The arresting officers asked defendant to consent to a search of his home. Defendant did not respond to this request.

Narcotics detectives were summoned to defendant's home. The officers also telephoned a deputy county attorney to request that a search warrant for defendant's home be secured. When the narcotics detectives arrived, one of them repeated

the request for consent to search the home. The detective told defendant that a warrant was being prepared. Defendant told the detective that he had not said they could not search, he had simply not said they could search. The detective repeated his request, telling the defendant that his consent would expedite the process. Defendant then told the detective that he wished to get it over with, and that the officers could search. Defendant was handcuffed throughout the period in which these requests were repeated.[1]

Immediately after voicing his consent to the search, defendant told the officers there were two bags of marijuana in the refrigerator. Officers also found cocaine and psilocybin mushrooms in an unlocked safe in the bedroom. At trial, defendant moved to suppress admission of the evidence located in the search of his home, challenging the voluntariness of his consent. The trial court concluded that consent had been freely given and denied the motion to suppress.

## CONDITIONAL GUILTY PLEA

■ In *State v. Sery*, 758 P.2d 935, 938–39 (Utah Ct.App.1988), this court recognized the validity of conditional guilty pleas. Under a conditional guilty or no-contest plea, the defendant preserves the right to challenge particular issues on appeal and to then withdraw the plea in the event the appeal is successful. *Id.* at 938–40. The state persists in asserting that defendant did not enter a conditional plea and is now precluded from appealing the trial court's denial of his motion to suppress evidence.

■ When this court was originally asked to consider defendant's appeal, the record did not reflect that defendant's guilty plea was entered consistent with

*Sery.* Although the trial court had issued a certificate of probable cause, the record contained no direct indication that defendant's guilty plea was conditional. *State v. Bobo*, 131 Utah Adv.Rep. 25, 25 (Utah Ct. App.1990) (per curiam). A defendant seeking appellate review pursuant to a conditional plea bears the burden of demonstrating that the conditional nature of the plea is unambiguously established in the trial court record. *See Bobo*, 131 Utah Adv. Rep. at 25 (withdrawn on other grounds). *See also Onyeabor v. Pro Roofing, Inc.*, 787 P.2d 525, 527 (Utah Ct.App.1990) (burden on parties to create adequate record to preserve issues for appeal). Defendant must show that the prosecutor consented to the conditional plea and that the trial judge approved the plea. *Sery*, 758 P.2d at 939.

■ On petition for rehearing, defendant presented this court with an affidavit of the trial judge, in which he unqualifiedly stated that defendant's plea was conditional and that the suppression issue was preserved for appeal. While such should be made to appear of record, defendant cannot be deprived of the benefit of his plea bargain due to an oversight of this nature. The oversight was expeditiously and unambiguously corrected to our satisfaction with the judge's affidavit. The plea was clearly conditional and we will turn to the merits of the issue preserved for appeal.

## STANDARD OF REVIEW

■ We review the findings of fact[2] supporting a trial court's decision on a motion to suppress under a clearly erroneous standard. *State v. Marshall*, 791 P.2d 880, 882 (Utah Ct.App.), *cert. denied*, 800 P.2d 1105 (Utah 1990); *State v. Sierra*, 754 P.2d 972, 974 (Utah Ct.App.1988). *See also State v. Walker*, 743 P.2d 191, 193 (Utah

---

1. It is unclear from the record how many separate requests were made, although it may have been as many as five by various officers over a period of 30–40 minutes.

2. The trial court's decision to grant or deny a motion to suppress evidence must be supported by detailed factual findings. *State v. Lovegren*, 798 P.2d 767, 769–71 (Utah Ct.App.1990); *Marshall*, 791 P.2d at 882 n. 1.

1987). The trial court's factual determinations are clearly erroneous only if in conflict with the clear weight of the evidence, *Marshall,* 791 P.2d at 882, or if this court has a "definite and firm conviction that a mistake has been made." *Walker,* 743 P.2d at 193. *See State v. Sery,* 758 P.2d 935, 942 (Utah Ct.App.1988).

 While we accord considerable deference to factual findings since the trial court is in the best position to evaluate witness credibility and the like, we examine the conclusions of law arising from those findings under a correction-of-error standard according no particular deference to the trial court. *State v. Arroyo,* 770 P.2d 153, 154–55 (Utah Ct.App.1989), *rev'd on other grounds,* 796 P.2d 684 (Utah 1990). Therefore, the factual findings leading to the trial court's determination that defendant voluntarily consented to the search of his home are considered for clear error and the legal conclusion of voluntary consent premised upon those facts is examined for correctness. *See Oates v. Chavez,* 749 P.2d 658, 659 (Utah 1988).

## CONSENT TO SEARCH

### A. State Constitution

 Defendant asks us to examine his consent under Article I, section 14, of the Utah Constitution, and argues we should adopt a rule which would require law enforcement officers to inform persons, of whom they request consent to search, of the right to refuse consent. Counsel for

3. Defendant suggests that like the *Miranda* warnings which must precede custodial interrogation, persons asked to consent to a search should be advised along these lines: You have the right to refuse permission for any search. If you withhold consent, we would be required to request a search warrant from a judge, which warrant would only issue if we could show the judge probable cause to believe [the item sought] will be found. If you consent to the search, any incriminating evidence found can and will be used against you.

4. Utah attorneys are by no means unique in their struggle to heed the call nor are Utah courts alone in their insistence that state consti-

defendant vigorously argued before this court that rights granted under the Fourth Amendment and its Utah counterpart ought to stand in equal respect to those granted under the Fifth Amendment, and, therefore, that a *Miranda*-type warning should be required under the state constitutional provision paralleling the Fourth Amendment.[3] Under the prevailing view, such an explanation is but one factor in determining the voluntariness of consent. *See, e.g., Tukes v. Dugger,* 911 F.2d 508, 517 (11th Cir.1990) (citing cases). *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973) (determinative factors include "lack of any effective warnings to a person of his rights").

While we welcome argument of the general sort advanced by defendant, we decline to adopt the rule urged by defendant in this case. Defendant's brief and arguments reflect little more than the "nominal allusion" to state constitutional rights condemned in *State v. Johnson,* 771 P.2d 326, 328 (Utah Ct.App.1989). Until such time as attorneys heed the call of the appellate courts of this state to more fully brief and argue the applicability of the state constitution,[4] *see, e.g., State v. Earl,* 716 P.2d 803, 806 (Utah 1986) ("[i]t is imperative that Utah lawyers brief [Utah courts] on relevant state constitutional questions"); *Johnson,* 771 P.2d at 328, we cannot meaningfully play our part in the judicial laboratory of autonomous state constitutional law development.[5] *See* Brennan, *The Bill of Rights and the States: The Revival of*

tutional issues be meaningfully briefed. *See, e.g., State v. Wethered,* 110 Wash.2d 466, 755 P.2d 797, 800–01 (1988).

5. While the cases cited in the text and many others have made the general call, we are mindful of the concern of some attorneys that we have not been entirely clear about what we are looking for. It may be helpful to note that in most cases where an argument is made for an innovative interpretation of a state constitutional provision textually similar to a federal provision, the following points should be developed and supported with authority and analysis.

First, counsel should offer analysis of the unique context in which Utah's constitution de-

*State Constitutions as Guardians of Individual Rights,* 61 N.Y.U.L.Rev. 535, 549 (1986) (noting that the state courts' role as laboratories for development of individual rights was being revived). Moreover, the proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not, as typically happens and as happened here, for the first time on appeal. *Johnson,* 771 P.2d at 327–28. We therefore consider the voluntariness of defendant's consent to search his apartment solely under the Fourth Amendment to the federal constitution.

### B. Federal Constitution

 Voluntariness of consent must be decided after consideration of the totality of the circumstances. *State v. Whittenback,* 621 P.2d 103, 106 (Utah 1980). The Utah Supreme Court has offered certain factors to guide the determination of voluntariness of consent under the Fourth Amendment, including: "1) the absence of a claim of authority to search by the officers; 2) the absence of an exhibition of force by the officers; 3) a mere request to search; 4) cooperation by the owner ... and 5) the absence of deception or trick on

the part of the officer." *Id.* In ruling on the motion to suppress, the trial court in this case entered specific findings including that "no force [was] exhibited and no threats were made to the defendant.... The defendant was cooperative. No tricks were employed by the law enforcement officers, when they said they were getting a warrant they were in the process of getting a warrant [through the efforts of] the county attorney." Viewing the trial court's factual findings under a "clearly erroneous" standard, we conclude that the court's findings are supported by substantial evidence and that they are not otherwise clearly erroneous. *Marshall,* 791 P.2d at 882.

Defendant nonetheless claims the trial court erred in its legal conclusion that defendant's consent was voluntary, arguing that the officers' statements to the effect that the county attorney was preparing a warrant, and the repeated requests for consent while defendant was handcuffed and in custody, were coercive, thus precluding a conclusion of voluntary consent. We disagree.

 Consent given while in custody does not, per se, render the consent invol-

---

veloped, which is particularly germane in the search and seizure context. *See, e.g.,* Bradley, *Hide and Seek: Children on the Underground,* 51 Utah Hist.Q. 133, 142 (1983); Crawley, *The Constitution of the State of Deseret,* 29 B.Y.U. Studies 7 (1989); Flynn, *Federalism and Viable State Government—The History of Utah's Constitution,* 1966 Utah L.Rev. 311.

Second, counsel should demonstrate that state appellate courts regularly interpret even textually similar state constitutional provisions in a manner different from federal interpretations of the United States Constitution and that it is entirely proper to do so in our federal system. *See, e.g., State v. Hygh,* 711 P.2d 264, 272–73 (Utah 1985) (Zimmerman, J., concurring); *State v. Brooks,* 638 P.2d 537, 539 (Utah 1981). *See also State v. Watts,* 750 P.2d 1219, 1221 n. 8 (Utah 1988) ("choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating the state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts"). *See generally People v. Brisendine,* 13 Cal.3d 528, 550, 531 P.2d 1099, 1113, 119 Cal.Rptr. 315, 329 (1975) ("It is a fiction too long accepted that provisions

in state constitutions textually identical to the Bill of Rights were intended to mirror their federal counterpart. The lesson of history is otherwise: the Bill of Rights was based upon corresponding provisions of the first state constitutions, rather than the reverse."); *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974); *State v. Johnson,* 68 N.J. 349, 346 A.2d 66 (1975).

Third, citation should be made to authority from other states supporting the particular construction urged by counsel. *See State v. Jewett,* 146 Vt. 221, 500 A.2d 233, 237 (1985) (describing the "sibling state" approach). Particular attention should be given to those states whose constitutions served as models for the Utah Constitution. *See, e.g.,* M. Hickman, *Utah Constitutional Law* 42–43 (1954) (referring to the Illinois Constitution).

We refer counsel to the insightful primer on state constitutional advocacy found in *State v. Jewett,* 146 Vt. 221, 500 A.2d 233 (1985), cited with approval in *State v. Earl,* 716 P.2d 803, 806 (Utah 1986). *See also State v. Hunt,* 91 N.J. 338, 450 A.2d 952 (1982) (Handler, J., concurring).

untary. *United States v. Janik,* 723 F.2d 537, 548 (7th Cir.1983). The fact that defendant was immediately handcuffed upon arrest and remained handcuffed similarly does not defeat a conclusion of voluntariness.[6] It is but a single element for the trial court to consider. *People v. Ratliff,* 41 Cal.3d 675, 715 P.2d 665, 671, 224 Cal. Rptr. 705, 710–11 (1986) (handcuffing does not demonstrate that consent is involuntary); *United States v. Kon Yu–Leung,* 910 F.2d 33, 41 (2nd Cir.1990) (finding of coercion does not follow from handcuffing); *Janik,* 723 F.2d at 548. We note that even though defendant was under arrest and in custody, he was in the relative security and comfort of his own home.

■■■ Assuming the officers' tone and tenor implied that a warrant would ultimately be issued and result in a search of defendant's apartment,[7] we disagree with defendant's assertion that the implication vitiated the voluntary nature of his consent. The trial court found that the officers had in fact telephoned a deputy county attorney, who was in the process of preparing a warrant application. A truthful declaration of the alternative course of action the officers were simultaneously taking does not amount to coercion. *Kon Yu–Leung,* 910 F.2d at 41; *United States v. Lace,* 669 F.2d 46, 52 (2nd Cir.), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982); *Ratliff,* 715 P.2d at 671, 224 Cal.Rptr. at 710–11. The trial court found that the officers honestly represented their efforts—they were actively seeking a search warrant at the time they claimed to be.

The trial court considered the factors suggested in *Whittenback* and resolved four of the five factors in favor of voluntariness. The trial court then applied the totality of the circumstances test and determined that consent was freely given. We see no error in the court's legal conclusion of voluntary consent in view of its findings of fact, which enjoy adequate evidentiary support.

## CONCLUSION

Defendant properly preserved his right to appeal the denial of his motion to sup-

---

**6.** Defendant claims the repeated requests for consent, *see* note 1, *supra,* during a time when he was handcuffed, instilled a coercive atmosphere precluding voluntariness. We have examined the record and find no suggestion that the requests were not neutrally made; nothing in the record suggests that the officers were menacing or threatening in their requests.

While repeated requests which escalate into *demands* are inherently more coercive and demand keen scrutiny, repeated neutral requests, by their very nature, may well tend to send the message that a person has the right to refuse consent: Why else would the officers keep asking? On the other hand, the incessant reiteration of even neutrally phrased requests may tend to suggest the officers have not gotten the "right" answer yet from a suspect and that their requests will continue until the suspect gives the response they seek.

Although the factual mix in each case will vary, ordinarily the mere number of requests will be much less relevant than the surrounding circumstances and the way in which the requests are phrased and spoken.

**7.** Notably, the officers did not tell defendant that the warrant would inevitably issue, merely that it was being sought. The implication stemmed, if at all, from the officer's indication to defendant that the process would be expedited if he consented. This was surely accurate. Absent defendant's consent, the process of searching his apartment would not even begin until the warrant application was completed; one of the officers signed the affidavit which would accompany the application; the county attorney presented the application to a magistrate; the magistrate reviewed it and issued the warrant; and the warrant was then taken to defendant's home. But even if the implication fairly to be drawn went beyond merely the subject of timing to suggest that issuance of the warrant was inevitable, the implication was not misleading. Given an accurate and complete account of the evening's events, no magistrate would have had difficulty concluding there was probable cause to believe other drugs would be found in the home, namely the marijuana some of which had recently found its way into the pipe the officers found in plain view. Of course, any indication by officers that issuance of a warrant was inevitable would vitiate an ensuing consent if probable cause was anything less than iron-clad. Thus, officers would be well-advised to refrain from any commentary, direct or by implication, on the likelihood a warrant would actually issue.

press evidence by entering a conditional plea before the trial court. Defendant has failed to convince us that his consent to search his home was not freely and voluntarily given. Defendant's conviction is accordingly affirmed.

GREENWOOD and JACKSON, JJ., concur.