**STATE of Utah, Plaintiff and Appellee,**

v.

**George Edward HARGRAVES,
Defendant and Appellant.**

**No. 890684–CA.**

Court of Appeals of Utah.

Feb. 7, 1991.

Martin V. Gravis, Ogden, for appellant.

R. Paul Van Dam, State Atty. Gen., Sandra J. Sjogren (Argued), Asst. Atty. Gen., Salt Lake City, for appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

OPINION

GREENWOOD, Judge:

George Edward Hargraves appeals from a conditional guilty plea to possession of a controlled substance, a second degree felony, and possession of a controlled substance with intent to distribute, a second degree felony. He contends that evidence seized after a search of his car should have been suppressed. We affirm in part and remand for further proceedings.

FACTS

On February 27, 1989 Utah Highway Patrol Trooper Roger Spiegel was traveling south on Harrison Boulevard in Ogden, Utah, when a vehicle pulled out in front of his car. Shelley Hall was driving the vehicle and Hargraves was in the front passenger seat. Spiegel observed that Hargraves appeared nervous, and that he turned and looked back at Spiegel several times. Spiegel checked the vehicle's license plates through NCIC (the National Crime Information Center) and found that the car had not been reported stolen. Spiegel observed that the car's windshield was cracked, and therefore stopped the vehicle at 12:56 p.m.

Spiegel asked Hall for her driver's license and vehicle registration. Hall provided the registration form, but said that her license was in her luggage in the trunk of the car. The car registration indicated that Hargraves was the car's owner. After a short conversation between Hargraves and Hall, Hall admitted that she did not have her driver's license. Spiegel then called for backup.

Highway Patrol Trooper Kodele arrived at 1:03 p.m., and a third trooper, Horne, arrived sometime after that, but before 1:26 p.m., when Sergeant Bush arrived. A further NCIC check revealed an outstanding warrant for Hall from Oregon on a dangerous drug violation. Spiegel arrested her and placed her in one of the troopers' vehicles. He also issued a citation for the broken windshield.

Trooper Kodele noticed that the Texas car registration did not match the license plates of Hargraves's car. The officers checked with authorities in Texas to find out why there was a discrepancy between the registration and the license plates.

Testimony differed as to events surrounding the search of the car. Hargraves testified that throughout the incident he was fearful for his life, and that Trooper Spiegel kept his hand on his gun and cast him "evil" glances. Hargraves testified that Spiegel asked several times during the incident what he was hiding in the trunk. Hargraves also said he offered to drive the car away after he had shown the officers a valid driver's license. Hargraves testified further that he was ordered to open his trunk and made to kneel on the ground at the side of the car.

Spiegel testified that Hargraves said there was nothing in the trunk, offered him the car keys, and told him to look in the trunk. The trunk was open and Spiegel had looked inside, finding nothing, when Sergeant Bush arrived. Bush suggested that Hargraves sign a written consent form and the search was suspended until Hargraves had signed the consent form. Hargraves testified that he was told to sign the form, and further, that he was going into insulin shock and was confused at the time he signed the consent form. As he was filling out the consent form, Hargraves told the officers he was on probation for a drug violation in Oregon. He also told them he was diabetic. Further search of the inside of the car revealed one pound of cocaine and twenty pounds of marijuana hidden under the back seat and in a compartment in the back of the front seat.

Hargraves was arrested. He then told the officers he was going into shock and needed an insulin shot. The officers called for paramedics, who arrived at 2:42 p.m. They tested Hargraves and found his blood sugar to be in the high-normal range. Hargraves also scored a 15, the highest score possible, on the Glasgow Coma test, which meant he was well-oriented. Hargraves was transported to McKay Dee Hospital for administration of an insulin shot.

The hospital's emergency room physician tested Hargraves's blood sugar about fifteen minutes after Hargraves had the insulin shot and found a lower than normal blood sugar level. According to the physician, Hargraves's claim of insulin shock contradicted his request for insulin. The physician testified that the test administered at the hospital was more accurate than the one given in the field, but also testified that blood sugar levels can drop precipitously in a short period of time.

Hargraves testified that throughout the incident he was frightened and confused. He stated that he had to beg to have a drink and coat brought to him from his car. The troopers, however, testified that the atmosphere at the scene was cordial, and that Hargraves chatted with them throughout the incident. They testified that a drink and coat were given to Hargraves at his first request, and that he was never told to consent to a search, or to sign the consent form. Further, both the troopers and paramedics testified that Hargraves appeared alert and coherent throughout the incident.

Hargraves moved to suppress the evidence seized on the basis that the initial stop was a pretext and that his consent was not voluntary. The court stated it could not tell if Hargraves thought he was in custody at the time of the search, but would assume so for purposes of deciding the motion to suppress. Based upon the testimony presented, the trial court found that Hargraves's mind was clear when he consented to the search, and that the consent was voluntary. Hargraves's motion to suppress the evidence seized in the search was therefore denied. No ruling was made regarding the pretext stop issue.

Hargraves entered a conditional guilty plea to possession of a controlled substance and possession of a controlled substance with intent to distribute. His plea was conditioned upon preservation of the right to bring this appeal.

On appeal, Hargraves contends his motion to suppress should have been granted

because (1) the court erred in finding that Hargraves's consent to the search of his vehicle was voluntary, and (2) Hargraves's consent to the search of his vehicle was invalid because it resulted from a prior illegal detention.

## STANDARD OF REVIEW

■■■ "Under a conditional guilty or no-contest plea, the defendant preserves the right to challenge particular issues on appeal and to then withdraw the plea in the event the appeal is successful." *State v. Bobo*, 803 P.2d 1268, 1271 (Utah Ct.App. 1990), (citing *State v. Sery*, 758 P.2d 935, 938–40 (Utah Ct.App.1988)). Findings of fact supporting a trial court's decision on a motion to suppress are reviewed under a "clearly erroneous" standard. The trial court's factual determinations are clearly erroneous only if they conflict with the clear weight of the evidence or if this court has a definite and firm conviction that a mistake has been made. *Bobo*, at 1271. "While we accord considerable deference to factual findings since the trial court is in the best position to evaluate witness credibility and the like, we examine the conclusions of law arising from those findings under a correction-of-error standard according no particular deference to the trial court." *Id.* at 1272 (citing *State v. Arroyo*, 770 P.2d 153, 154–55 (Utah Ct.App.1989), *rev'd on other grounds*, 796 P.2d 684 (Utah 1990)). Therefore, the factual findings leading to the trial court's determination that the defendant voluntarily consented to the search of his vehicle are reviewed for clear error and the legal conclusion of voluntary consent premised upon those facts is examined for correctness. *State v. Palmer*, 803 P.2d 1249 (Utah Ct.App.1990).

## ANALYSIS

### Voluntary Consent

■■■ The trial court found that credible evidence established that Hargraves's consent was voluntary. Each of the officers testified that Hargraves voluntarily consented to the search, that there was no coercion, and that at the time of consent he was lucid and coherent. The paramedics testified similarly and administered a field test that showed Hargraves to be well oriented. In addition, Hargraves signed the consent form, an act further evidencing voluntary consent. Although there was evidence to the contrary by way of Hargraves's testimony, the trial court was in the best position to weigh testimonial credibility and there was sufficient evidence to support the court's finding that there was no coercion and that Hargraves was mentally capable. We conclude, therefore, that there was no error in the trial court's finding that the consent to the search was voluntary.

### Legality of Detention

Hargraves argues that he was illegally detained by the officers after the initial stop in violation of the fourth amendment, and that he should have been allowed to leave with his car after Hall was arrested. He contends that *State v. Arroyo*, 796 P.2d 684 (Utah 1990), mandates suppression of the evidence seized even if his consent was voluntary, because it resulted from the illegal detention.

In some instances, voluntary consent to a search will be deemed unlawful, if it follows initial police illegality. *Id.* at 688. "The inquiry should focus on whether the consent was voluntary and whether the consent was obtained by police exploitation of the prior illegality. Evidence obtained in searches following police illegality must meet both tests to be admissible." *Id.* (citing 3 W. LaFave, *Search and Seizure* § 8.2(d), at 190 (2d ed. 1987)). Since we have upheld the trial court's finding of voluntary consent, the remaining question is whether Hargraves's consent was obtained by exploitation of prior illegal action by the police.

■■■ This issue was not raised at the trial level. In order to consider a constitutional issue raised for the first time on appeal, a liberty interest, plain error, or exceptional circumstances must be found. *State v. Jameson*, 800 P.2d 798, 800 (1990) (liberty interest); *State v. Anderson*, 789 P.2d 27, 29 (Utah 1990) (plain error); *Jolivet v. Cook*, 784 P.2d 1148, 1151 (Utah

1989), *cert. denied,* — U.S. —, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990) (exceptional circumstances); *See also State v. Harrison,* 805 P.2d 769, 779 n. 13 (Utah Ct.App. 1991). In the present case, a liberty interest is involved because the search produced evidence critical to Hargraves's conviction and incarceration. In addition, this court has indicated that exceptional circumstances include those which would explain and excuse a party's failure to raise a claimed error at the trial level. *State v. Webb,* 790 P.2d 65, 78 (Utah Ct.App.1990). In the case at hand, we find exceptional circumstances to exist in that *Arroyo* was decided subsequent to the trial. Prior to the supreme court's *Arroyo* decision, this court had held that "a search conducted pursuant to voluntary consent purges the taint from the prior illegality." *Arroyo,* 770 P.2d at 155; *State v. Aquilar,* 758 P.2d 457, 459 (Utah Ct.App.1988). Under that authority, it would have been futile to raise the issue of illegal detention once the court found voluntary consent. Therefore, because a liberty interest is involved and exceptional circumstances exist, this court will consider the issue of whether Hargraves's consent was tainted and, therefore, invalid, as an exploitation of an illegal detention.

■ The trial court was not asked to determine if Hargraves was illegally detained, and therefore made no findings on either whether detention occurred or, if so, whether the detention was justified. The court did state, however, that it could not tell from the evidence whether Hargraves thought he was free to go or not.

Detention, or seizure of a person under the fourth amendment, occurs when a person's liberty is restrained by an officer. *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980). Seizure occurs "[w]hen a reasonable person, based on the totality of the circumstances, remains, not in the spirit of cooperation with the officer's investigation, but because he believes he is not free to leave...." *State v. Trujillo,* 739 P.2d 85, 87 (Utah Ct.App.1987). *See also Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877; *State v. Jackson,* 805 P.2d 765, 766–67 (Utah Ct.App.1990). Therefore, the court needs to determine not what Hargraves actually or subjectively thought, but to apply an objective standard, determining what a reasonable person in those circumstances would have believed. This factual issue is best addressed at the trial level. If the trial court finds that Hargraves was in custody throughout this incident, the court must determine whether the custody was lawful in its scope and duration. *United States v. Guzman,* 864 F.2d 1512, 1518–19 (10th Cir.1988). The Utah Supreme Court has described three types of constitutionally permitted contact between the public and members of law enforcement, as follows:

> (1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*State v. Deitman,* 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (quoting *United States v. Merritt,* 736 F.2d 223, 230 (5th Cir.1984)). If Hargraves was "seized," it was a level two encounter, and its lawfulness will be measured against the existence of an articulable suspicion. Finally, if the custody was unlawful, the court must determine whether the consent to search was obtained by exploitation of that prior illegality.

## CONCLUSION

We affirm the trial court's finding that Hargraves's consent to the search was voluntary. We remand to the trial court for findings as to whether the voluntary consent was obtained by an exploitation of a prior illegality, i.e., a level two custody of excessive duration.

BENCH and BILLINGS, JJ., concur.