**STATE of Utah, Plaintiff and Appellee,**

v.

**Donald KITCHEN, Defendant and Appellant.**

**No. 900307-CA.**

Court of Appeals of Utah.

March 28, 1991.

John D. O'Connell (argued), Salt Lake City, for defendant-appellant.

R. Paul Van Dam, State Atty. Gen., David B. Thompson (argued), Asst. Atty. Gen., for plaintiff-appellee.

Before GREENWOOD, JACKSON and RUSSON, JJ.

RUSSON, Judge:

Donald Kitchen appeals his conviction of unlawful possession of cocaine, a controlled substance, with intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (Supp.1990). We reverse and remand for a new trial.

 The constitutionality of a police stop of a person under the fourth amendment of the U.S. Constitution hinges upon the facts of each case. Therefore, we review the facts in detail. *State v. Steward,* 806 P.2d 213, 214 (Utah Ct.App.1991) (citing *State v. Sierra,* 754 P.2d 972, 973 (Utah Ct.App. 1988)).

On May 17, 1989, approximately thirty-five officers from the Pleasant Grove, American Fork, Alpine, and Orem Police Departments, and the Utah County and Juab County Sheriff's Departments participated in a roadblock, which was conducted in conjunction with classroom training on criminal interdiction. The roadblock was conducted on Interstate 15, south of Nephi in Juab County, which is a major route linking Salt Lake City, Utah and Los Angeles, California. The purpose of the roadblock was to check for driver's licenses, registration, liability insurance, and auto safety, as well as to observe any violations of the criminal law, including alcohol and drug violations. The roadblock was planned and conducted under the direction of Utah Highway Patrol Sergeant Paul Mangelson, with the approval of his supervisor, Lieutenant Jim Uttley.

Notice of the roadblock was published approximately two weeks earlier in the Provo Daily Herald and the Nephi Times News. On the day of the roadblock, four orange signs, giving notice of the roadblock, were placed in each direction and spread over a distance of approximately one quarter mile from the checkpoint. In order to avoid hazardous traffic congestion, only automobiles and light trucks were stopped, while large trucks and buses were allowed to pass. Sergeant Mangelson instructed officers to check driver's licenses and registrations for all stopped vehicles, and to be alert for anything which would indicate the presence of contraband. If further investigation was necessary, the vehicle was to be ordered to the side of the road.

At approximately 11:00 a.m., Kitchen's vehicle, a Chevy Blazer, was stopped at the roadblock. Kitchen and one passenger, Daniel Burke, were in the vehicle. Officer John Lloyd approached the driver's side and asked Kitchen for his driver's license and car registration, which Kitchen produced. Sergeant Mangelson testified that he was directly behind Officer Lloyd and that he could smell a strong odor of burnt marijuana coming from the vehicle. Sergeant Mangelson moved closer to the vehicle to verify the smell. He then moved to the passenger side and asked Kitchen and Burke whether there was marijuana in the vehicle, and both responded "no." Sergeant Mangelson asked if he could search the vehicle, and such permission was denied. He then directed Kitchen to pull the vehicle off to the side of the road.

Sergeant Mangelson told Kitchen and Burke that they might as well give him the marijuana because he could smell it and

knew it was there, whereupon Kitchen gave him two baggies containing a green, leafy substance, later determined to be marijuana. He also observed a bulge in Kitchen's pocket which contents, at his request, were produced and found to be cash in excess of $2,000. He then searched the interior of the vehicle and found a vial containing a white powder, later determined to be cocaine. Kitchen and Burke were placed under arrest and read their *Miranda* rights.

Sergeant Mangelson continued his search of the vehicle and found a suitcase containing what was later determined to be twenty-seven ounces of cocaine. During a later inventory search, he also found a small vial containing several marijuana roaches.

Prior to trial, Kitchen filed a motion to suppress all evidence seized from his vehicle as a result of the roadblock stop on the ground that this stop was unconstitutional. Following an evidentiary hearing, the motion was denied. The parties then stipulated that the trial court could decide the case on the evidence submitted at the suppression hearing. The trial court found Kitchen guilty of possession of cocaine, a controlled substance, with intent to distribute.

Defendant raises the following issue on appeal: did the roadblock in the present case violate the fourth amendment of the U.S. Constitution? [1]

█ As a preliminary matter, we address the State's argument that this issue was not properly preserved for appeal. The State argues that the unconstitutionality of the roadblock in question was not briefed with sufficient specificity before the trial court to preserve the issue for appeal. The State correctly cites *State v. Carter*, 707 P.2d 656 (Utah 1985), for the rule that when a defendant fails to assert a particular ground for suppression of evidence before the trial court, such will not be considered on appeal. *Id.* at 660–61. However, the constitutionality of the roadblock in question was precisely the ground

raised below, and although defendant's argument emphasized a statutory argument, the constitutionality of this roadblock was also adequately briefed and presented. Moreover, the constitutionality question was the precise basis of the trial court's ruling. Accordingly, we proceed by reviewing the trial court's determination that this roadblock did not violate the fourth amendment of the U.S. Constitution.

█ We will not disturb the factual findings of the trial court unless such findings are clearly erroneous. *State v. Hargraves*, 806 P.2d 228, 229 (Utah Ct.App.1991) (citations omitted). However, conclusions of law arising from those factual determinations are reviewed under a "correction of error" standard. *Id.*

The fourth amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.

In *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the United States Supreme Court held that under the fourth amendment, warrantless seizures, if not based upon individualized reasonable suspicion of criminal activity, "must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers," which serves a vital public interest without undue interference with individual liberty. *Id.* at 51, 99 S.Ct. at 2640. The Court's central concern in so holding was "to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Id.* (citations omitted). The Court therein developed a three-pronged balancing test applicable to all warrantless seizures lacking individualized reasonable suspicion. This balancing test requires a court to weigh: (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the

---

**1.** Kitchen also raises the constitutionality of the roadblock under article I, section 14 of the Constitution of Utah and three additional issues on appeal, which we do not address because we reverse on fourth amendment grounds.

■

public interest, and (3) the severity of the interference with individual liberty. *Id.* at 50–51, 99 S.Ct. at 2640–41.

Subsequently, in *Michigan Dep't of State Police v. Sitz*, — U.S. ——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), the United States Supreme Court held that although a roadblock stop constitutes a "seizure" under the fourth amendment, brief roadblock detentions, even if lacking individualized reasonable suspicion of criminal activity, are constitutionally permissible if the requirements of *Brown* are met. In *Sitz*, the Michigan State Police organized a sobriety-checkpoint program, with specific guidelines governing checkpoint operations, site selection, and publicity. The Director of the Michigan Department of State Police appointed a Sobriety Checkpoint Advisory Committee, comprised of representatives from the State Police forces, local police forces, state prosecutors, and the University of Michigan Transportation Research Institute. This committee created extensive guidelines for the general operation of checkpoints, without reference to a particular roadblock, thus satisfying the need for an explicit, neutral plan.

The Court outlined the checkpoint's operation as follows:

> Under the guidelines, checkpoints would be set up at selected sites along state roads. All vehicles passing through a checkpoint would be stopped and their drivers briefly examined for signs of intoxication. In cases where a checkpoint officer detected signs of intoxication, the motorist would be directed to a location out of the traffic flow where an officer would check the motorist's driver's license and car registration and, if warranted, conduct further sobriety tests. Should the field tests and the officer's observations suggest that the driver was intoxicated, an arrest would be made. All the other drivers would be permitted to resume their journey immediately.

*Id.* at ——, 110 S.Ct. at 2484.

It was established in *Sitz* that the checkpoint operation lasted 75 minutes, 126 vehicles were stopped, and two drivers were detained for field sobriety testing, one of whom was arrested for driving under the influence of alcohol. A third driver, who drove through the checkpoint without stopping was apprehended and arrested for driving under the influence. The average delay for each vehicle was approximately twenty-five seconds. The Court, applying the *Brown* balancing test to the roadblock context, concluded that under the facts, the roadblock was constitutionally permissible because it involved a vital state interest, with a procedure that advanced such interest, and did so without excessive interference with individual liberty.

■ Applying *Brown* and *Sitz* to the case at bar, we hold that the roadblock herein was not conducted pursuant to an explicit, neutral plan, nor was it constitutionally permissible under the *Brown* balancing test.

Unlike the plan in *Sitz*, the plan before us was prepared by the actual officer who conducted the roadblock, rather than by a neutral body. We question the neutrality of any plan which is authored by the same person whose actions the plan is purported to limit. Secondly, the purpose of the plan in *Sitz* was to provide guidelines for the conducting of roadblocks in general, whereas the plan before us was formed with this specific roadblock in mind. Thirdly, unlike the plan in *Sitz*, there is no evidence that the plan provided explicit guidelines, beyond the direction to stop only automobiles and light trucks. The guidelines in any plan must, at a minimum, be specific enough to prevent "arbitrary invasions" enacted "solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51, 99 S.Ct. at 2640. Clearly, Sergeant Mangelson's plan did not meet this minimum requirement.

Moreover, even had the roadblock been the result of an explicit, neutral plan, it must still meet the *Brown* balancing test. In examining the public concerns served by this roadblock, the evidence supports the trial court's factual determination that checking for drunk drivers was one of the purposes of this roadblock. Further, such is an important State interest. *Sitz*, — U.S. at ——, 110 S.Ct. at 2485–86. As the

United States Supreme Court noted in *Sitz*, "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Id.* The first prong of the *Brown* test has, therefore, been fully met and weighs in favor of finding the roadblock constitutionally permissible.

However, the second prong of the *Brown* test, the degree to which the roadblock advances the public interest, has not been met. First, there was no finding as to whether this roadblock advanced the aforementioned public interest. Moreover, there is a paucity of evidence, empirical or otherwise, that this roadblock accomplished *any* of the purposes for which it was conducted. In *Sitz*, in addition to data as to the number of arrests made, records were kept as to the number of vehicles stopped, the number subject to further investigation, and the length of the delay involved. Here, only the number of violations were recorded. Additionally, in *Sitz*, expert testimony was received as to the effectiveness of roadblocks in advancing detection of drunk drivers; here, no such expert testimony was offered. In short, no evidence was offered or received to support a finding that this roadblock advanced the interests for which it was conducted and, therefore, this prong of the *Brown* test has not been met.[2]

Because of the failure to comply with the requirements set forth in *Brown*, as clarified in *Sitz*, we hold that this roadblock was unconstitutional and stops in regards thereto were unconstitutional seizures under the fourth amendment of the U.S. Constitution.[3] Therefore, evidence seized as a result thereof should have been suppressed.

Accordingly, this case is reversed and remanded for further proceedings consistent with this opinion.

GREENWOOD and JACKSON, JJ., concur.

---

**2.** Since this roadblock fails the *Brown* balancing test under the second prong, we do not address the third prong, that is, the severity of the interference with individual liberty.

**3.** In arriving at this conclusion, we are mindful of Justice Rehnquist's concern in *Sitz* about "transfer[ing] from politically accountable officials to the courts the decision as to which among reasonable alternatives should be employed to deal with a serious public danger." *Sitz,* —— U.S. at ——, 110 S.Ct. at 2487. Our decision is in full accord with Justice Rehnquist's observation that "the choice among reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers." *Id.* Accordingly, it is not within this court's, or any court's, province to weigh the reasonable alternative methods and determine for the executive branch which method it must use in combatting the drunken driving problem. However, once the executive branch, or an agent thereof, chooses a method of addressing this problem, that plan must be examined by the judiciary, whose responsibility it is to determine the constitutionality of such plan.