**STATE of Utah, Plaintiff and Appellee,**

v.

**Julie HARMON, Defendant and Appellant.**

**No. 920463–CA.**

Court of Appeals of Utah.

June 14, 1993.

Mark R. Moffat and Elizabeth Holbrook, Salt Lake City, for defendant and appellant.

Jan Graham and J. Kevin Murphy, Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Julie Harmon appeals from her conviction of possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 1992). We affirm.

## FACTS

On November 19, 1991, Detective Russo received a tip from an informant that Harmon was distributing narcotics from her home. That evening, Detective Russo went to Harmon's home and met Harmon as she was backing her car out of her driveway. Detective Russo informed Harmon about the informant's tip and asked if he could search her home. Harmon testified that she refused, claiming she was on her way to visit her father who had recently suffered a heart attack. Detective Russo testified that she stated she would allow him to search when she returned from visiting her father. He advised her that he could not search her home without her consent and he would have to get a search warrant if she did not consent to allow him to search. He testified that he told her he could come back at a later time with a search warrant and that warrants are an "unpleasant experience."

She then drove away and proceeded to circle the block a few times, passing Detective Russo in front of her home each time. Russo remained at Harmon's home and radioed in a routine warrants and driver's license check. Detective Russo received a report that Harmon's license was suspended, upon which he obtained assistance from other officers and stopped her a few blocks from her home. Detective Russo arrested Harmon for driving with a suspended license. He searched her incident to the arrest and found controlled substances that were mislabeled or not prescribed to Harmon. Detective Russo then gave Harmon her *Miranda* rights, handcuffed her, put her into his car, and began driving her to jail.

On the way to jail, Harmon admitted that she had sold drugs from her home in the past and that she was trying to clean up her act. She told Russo that she would allow him to search her home if he drove her back to her house. Detective Russo testified that he told Harmon it would be inappropriate to search based on her consent because it would appear that he was coercing her consent by arresting her and taking her to jail. She again agreed to allow him to search and offered to sign a consent form. Detective Russo testified that he told Harmon that he would prefer to apply for a search warrant and avoid the appearance of coercion. Harmon again stated she would consent to the search of her home.

Detective Russo then informed her that they would go over the consent form and if she still wanted to allow him to search, they would turn back and search the home. He testified that he did not promise her any benefit for permitting a search of her home. On the way back, Detective Russo called in for assistance to search her home. When they arrived at Harmon's home, Detective Russo again gave Harmon her *Miranda* rights and she signed a written consent to search her home. Detective Russo, along with other officers who had arrived on the scene, proceeded inside where Harmon showed them various items of drug paraphernalia and illegal drugs from underneath a sofa in the living room. Detective Russo and other officers testified that Harmon was friendly and cooperative during the search.

Harmon was later charged with three counts of possession of a controlled substance, two third degree felony counts and one class B misdemeanor count, relating to the drugs found in Harmon's home. The misdemeanor count was dismissed pursuant to Harmon's plea bargain. One of the felony counts was dismissed after the preliminary hearing. Harmon filed a motion to suppress evidence found at her home in violation of her constitutional rights. The trial court denied the motion and Harmon pleaded guilty to the remaining felony count, reserving her right to appeal the denial of her motion pursuant to *State v. Sery,* 758 P.2d 935 (Utah App.1988).

## ISSUES

Harmon claims the trial court improperly found (1) the traffic stop was not a "pretext" stop; and (2) her consent for police to search her home was freely and voluntarily given.

## PRETEXT STOP

Harmon claims that Detective Russo stopped her for driving with a suspended license as a pretext to search for evidence of a more serious crime. The trial court, in determining the detention was not pretextual, found that "a reasonable officer would have stopped and arrested this defendant." The test to determine whether a detention is pretextual is whether a reasonable officer, in view of the totality of the circumstances, would have detained the defendant for the traffic violation absent any unconstitutional motivation. *State v. Lopez,* 831 P.2d 1040, 1044 (Utah App. 1992), *cert. granted,* 843 P.2d 1042 (Utah 1992). Detective Russo clearly had probable cause to stop and arrest Harmon for driving with a suspended license. *See State v. Chapman,* 841 P.2d 725, 728 (Utah App.1992). Further, Detective Russo testified that it was the usual practice for persons driving with a suspended license to be stopped and either arrested or issued a

citation. Detective Russo did not deviate from that procedure when he stopped and arrested Harmon. Accordingly, we agree with the trial court that the stop and arrest were not unconstitutional.

## CONSENT TO SEARCH

██ Harmon also alleges the trial court incorrectly concluded that her consent to search her home was voluntary because the consent was not freely given but instead was a product of coercion and duress. Consent to search is valid under the Fourth Amendment if (1) the consent was voluntarily given, and (2) the consent was not obtained by police exploitation of the prior illegality.[1] *State v. Thurman,* 846 P.2d 1256, 1262 (Utah 1993); *Sepulveda,* 842 P.2d at 918. We apply a correction of error standard when a defendant challenges the "legal content"[2] of ·the trial court's ultimate conclusion that a consent was voluntary or involuntary. *Thurman,* 846 P.2d at 1271. The trial court's factual findings will not be set aside unless they are clearly erroneous. *Id.; Barnhart,* 850 P.2d at 476.

██ Whether consent to search was voluntarily given is determined from the totality of the circumstances surrounding the consent, including the characteristics of the accused and the details of the police conduct. *Thurman,* 846 P.2d at 1263; *State v. Robinson,* 797 P.2d 431, 437 (Utah App.1990). In order for consent to be voluntary, (1) there must be clear and positive testimony that the consent was unequivocal, specific, and freely and intelligently given; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) the courts must indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived. *State v. Webb,* 790 P.2d 65, 82 (Utah App. 1990), *aff'd,* 853 P.2d 898 (1993).

██ The trial court properly determined Harmon's consent was voluntary. The record contains abundant evidence that Harmon freely gave her consent to the search and that the consent was not the product of duress or coercion.[3] The trial court found that after Harmon was arrested, Harmon informed Detective Russo that she would allow him to search her home.[4] Detective Russo informed Harmon on more than one occasion that without her consent,

---

**1.** This second prong of the voluntary consent analysis only applies if a prior police illegality exists. *State v. Sepulveda,* 842 P.2d 913, 918 (Utah App.1992). Because we find that Harmon's stop and arrest were not illegal, we need not address whether the consent was a product of a prior police illegality.

**2.** The legal content of ultimate factual findings consists of the identification and application of the legal principles that guide a trial court. *See State v. Horton,* 848 P.2d 708, 711 (Utah App. 1993); *c.f. Thurman,* 846 P.2d at 1271. These legal principles create a "field of inquiry" within which the trial court makes its ultimate factual findings. *State v. Barnhart,* 850 P.2d 473, 474 (Utah App.1993).

**3.** Harmon argues that Detective Russo was "very forceful" because Russo stated that he would have to shoot her dog if the dog attempted to harm any officers during the search. However, this statement was made after Harmon had agreed to the search and after she signed the consent form. Further, Detective Russo first asked Harmon if her dog might harm the officers and she responded affirmatively. Detective Russo allowed Harmon into

her home by herself to secure the dog. These actions and statements by Detective Russo did not contribute to a coercive environment.

Harmon further claims that because she was arrested by four officers, handcuffed, and was on her way to jail, she was coerced into consenting to the search of her home. The presence of four officers does not necessarily constitute an improper show of force. *See State v. Bobo,* 803 P.2d 1268, 1270–71 (Utah App.1990) (home entry and arrest by at least four officers did not invalidate consent). Also, consent given while a defendant is handcuffed and in police custody does not defeat a conclusion that consent is voluntary. *Id.* at 1273–74.

**4.** Although Harmon's testimony contradicted Officer Russo's in some aspects, it is the prerogative of the trial court to evaluate the evidence and choose what testimony to believe. *See State v. Menke,* 787 P.2d 537, 539 (Utah App. 1990) (trial court found arresting officers' testimony more credible than defendant's). The trial court stated that it was "inclined to believe Detective Russo's testimony over that of Harmon's" because "Harmon appeared to be very evasive as a witness and not credible."

he would have to obtain a search warrant to search her home.[5] Harmon also offered to sign a consent form to search her home. Later, she did, in fact, sign the consent form, which stated that she had the right not to have her home searched without a warrant and that she could refuse to consent to the search.[6] The trial court further found that Detective Russo did not promise Harmon any benefit for permitting him to search her home and informed her that she would probably go to jail for driving with a suspended license even if she consented to the search.[7]

Under the totality of these circumstances, we conclude the trial court made its findings within the appropriate established legal guidelines and the trial court's factual findings were not clearly erroneous. Further, even indulging Harmon with every reasonable presumption against the waiver of her right to refuse to consent, no convincing evidence exists that she did not waive that right. Thus, the trial court properly determined that Harmon's consent was voluntarily given.

## CONCLUSION

Accordingly, we affirm the trial court's determination that Harmon's stop was not unconstitutional and that Harmon's consent to search her home was voluntary.

BENCH and GARFF, JJ., concur.

5. Harmon alleges Detective Russo implied that he could secure a warrant at any time and search her home when he stated that he would have to get a warrant if she did not consent. Harmon alleges this statement was coercive and contributed to her consenting to the search of her home. However, the record clearly shows Detective Russo expressed no view to Harmon regarding whether a warrant could be obtained. He merely stated that if she did not consent to a search, he would have to get a warrant.

6. Harmon alleges her consent was not freely given because the written consent form she signed was not clear and specific, but "garbled." The consent form stated as follows:

I Julie Harmon, having been informed of my rights per Miranda not to have a search made of the premises, hereinafter mentioned, without a Search Warrant, of my right to refuse to consent to such a search, hereby authorize Det. R. Russo police officer and his agents of the Metropolitan Narcotics Strike Force to conduct a complete search of my person, premise(s) and/or vehicle at: 2904 South 9100 West. These officers are authorized by me to search and seize any contraband or fruits of any crime while conducting a search on a narcotics investigation.

This written permission is being given by me to the above mentioned police officer voluntarily and without threats or promises of any kind.

The consent form adequately informed Harmon of her right not to allow her home to be searched without her consent.

7. The trial court chose to believe Detective Russo's testimony even though Harmon testified that Detective Russo told her that if she would consent to the search, he would not take her to jail.